## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DEKALB COUNTY, FULTON COUNTY, and COBB COUNTY, GEORGIA,  ) ) ) ) | |
| Plaintiffs,  ) ) | |
| v.  ) ) | CIVIL CASE NO.: 1:12-cv-03640-SCJ |
| HSBC NORTH AMERICA HOLDINGS INC., ET AL.,  ) ) ) | |
| Defendants.  ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## BASED ON THE STATUTE OF LIMITATIONS

# **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ......................................................................................... 1

SUMMARY OF MATERIAL FACTS .......................................................... 4

    DeKalb County ....................................................................................... 5

    Fulton County ......................................................................................... 7

    Cobb County ......................................................................................... 10

    The City of Atlanta .............................................................................. 10

LEGAL STANDARD FOR SUMMARY JUDGMENT ............................. 11

ARGUMENT .............................................................................................. 12

I.      THE COUNTIES' CLAIM IS TIME-BARRED ............................... 12

    A.    The Continuing Violation Doctrine Does Not Apply ............... 13

         1.  The Counties Admit Knowledge of the Claim Outside the
            Limitations Period ................................................................ 15

         2.  The Counties Were Aware of Facts Supportive of the Claim
            Outside the Limitations Period ........................................... 18

    B.    The Equitable Tolling Doctrine Does Not Apply ..................... 19

    C.    The Counties Allege No Wrongful Lending Practices Within the
         Limitations Period ................................................................... 21

II.    THE COUNTIES' STATEMENTS REGARDING TIMING DISQUALIFY
     THEIR STANDING TO PURSUE THE CLAIM ................................. 23

CONCLUSION ........................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbotts v. Campbell*,
  551 F.3d 802 (8th Cir. 2008) ........................................................................... 17

*Arthur v. Thomas*,
  739 F.3d 611 (11th Cir. 2014) ....................................................................... 20

*Blue Cross & Blue Shield of Ala. v. Weitz*,
  913 F.2d 1544 (11th Cir. 1990) ..................................................................... 12

*Bradley v. Fla. Dep't of Transp.*,
  No. 4:01CV342-RH, 2002 U.S. Dist. LEXIS 27475 (N.D. Fla. Nov. 11, 2002) ........... 16

*Butler v. Matsushita Commc'n Indus. Corp.*,
  203 F.R.D. 575 (N.D. Ga. 2001) ................................................................... 21

*Carter v. West Publ'g Co.*,
  225 F.3d 1258 (11th Cir. 2000) ..................................................................... 15

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................................... 11

*City of Birmingham v. Citigroup Inc.*,
  No. CV-09-BE-467-S, 2009 U.S. Dist. LEXIS 123123 (N.D. Ala. Aug. 19, 2009) ..... 19

*City of Memphis v. Wells Fargo Bank, N.A.*,
  No. 09-02857-STA, 2011 U.S. Dist. LEXIS 48522 (W.D. Tenn. May 4, 2011) ........... 19

*City of Miami v. Bank of Am. Corp.*,
  No. 1:13-cv-24506-WPD (S.D. Fla. July 9, 2014) ....................................... 3, 15, 24, 25

*City of Miami v. Citigroup Inc.*,
  No. 1:13-cv-24508-WPD (S.D. Fla. July 9, 2014) .............................................. 3, 15, 24

*City of Miami v. Wells Fargo & Co.*,
    No. 1:13-cv-24508-WPD (S.D. Fla. July 9, 2014)...............................................3, 15, 24

*Credit Suisse Sec. (USA) LLC v. Simmonds*,
    132 S. Ct. 1414 (2012) ...................................................................................................20

*Ctr. for Biological Diversity v. Hamilton*,
    453 F.3d 1331 (11th Cir. 2006) ................................................................................14, 16

*Edwards v. Hyundai Motor Mfg. Ala., LLC*,
    701 F. Supp. 2d 1226 (M.D. Ala. 2010)..........................................................................14

*FDIC v. Skow*,
    955 F. Supp. 2d 1357 (N.D. Ga. 2012) ...........................................................................11

*Gladstone, Realtors v. Vill. of Bellwood*,
    441 U.S. 91 (1979) ...........................................................................................................24

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ...................................................................................................23, 24

*Hawkins v. Hamlet, Ltd.*,
    296 F. App'x 918 (11th Cir. 2008)...................................................................................14

*Hill v. Flagstar*,
    No. 12-cv-2770 (E.D. Pa. June 26, 2014) .......................................................................17

*Hipp v. Liberty Nat'l Life Ins. Co.*,
    252 F.3d 1208 (11th Cir. 2001)...........................................................................13, 14, 16

*Hunter v. Ferrell*,
    587 F.3d 1304 (11th Cir. 2009)..................................................................................19, 20

*Kellat v. Douglas Cnty.*,
    No. 1:10-CV-2250-WSD, 2010 U.S. Dist. LEXIS 144803
    (N.D. Ga. Sept. 27, 2010) ..........................................................................................14, 16

*Kellat v. Douglas Cnty.*,
  No. 10-15713-D, 2011 U.S. App. LEXIS 26442 (11th Cir. 2011) ................................ 14

*Lawrence v. Courtyards at Deerwood Ass'n, Inc.*,
  318 F. Supp. 2d 1133, 1141 (S.D. Fla. 2004) ................................................................ 23

*Lawrence v. Florida*,
  421 F.3d 1221 (11th Cir. 2005) ..................................................................................... 20

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  134 S. Ct. 1377 (2014) ..................................................................................... 2, 23, 25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ....................................................................................................... 11

*Mayor of Baltimore v. Wells Fargo Bank, N.A.*,
  677 F. Supp. 2d 847 (D. Md. 2010) ........................................................................ 18-19

*McCarn v. HSBC USA, Inc., et al.*,
  No. 1:12-CV-00375-LJO-SKO, 2012 U.S. Dist. LEXIS 162257
  (E.D. Cal. Nov. 9, 2012) ................................................................................................ 17

*Moskowitz v. Trs. of Purdue Univ.*,
  5 F.3d 279 (7th Cir. 1993) ............................................................................................. 22

*Nasser v. City of Homewood*,
  671 F.2d 432 (11th Cir. 1982) ....................................................................................... 24

*Obester v. Lucas Assocs.*,
  No. 1:08-CV-03491-MHS-AJB, 2010 U.S. Dist. LEXIS 144161
  (N.D. Ga. Aug. 2, 2010) ................................................................................... 15, 20, 22

*Pace v. DiGuglielmo*,
  544 U.S. 408 (2005) ................................................................................................. 13, 19

*Price v. Owens*,
  634 F. Supp. 2d 1349 (N.D. Ga. 2009) ......................................................................... 14

*Riddle v. Bank of Am. Corp.*,
   No. 12-1740, 2013 U.S. Dist. LEXIS 163526 (E.D. Pa. Nov. 18, 2013)..... 14-15, 16, 17

*Roberts v. Gadsden Mem'l Hosp.*,
   850 F.2d 1549 (11th Cir. 1988) ...................................................................22

*Salois v. Dime Sav. Bank of N.Y.*,
   128 F.3d 20 (1st Cir. 1997) .........................................................................17

*Sandvik v. United States*,
   177 F.3d 1269, 1271 (11th Cir. 1999).........................................................20

*Steele v. City of Port Wentworth*,
   No. CV405-135, 2008 U.S. Dist. LEXIS 20637 (S.D. Ga. Mar. 17, 2008).............21-22

*Thompson v. N. Am. Stainless, LP*,
   131 S. Ct. 863 (2011) .................................................................................24

*Trafficante v. Metro. Life Ins. Co.*,
   409 U.S. 205 (1972) ...................................................................................24

*TSG Water Res., Inc. v. D'Alba & Donovan Certified Pub. Accountants, P.C.*,
   260 F. App'x 191 (11th Cir. 2007)...............................................................25

*United States v. Laraneta*,
   700 F.3d 983 (7th Cir. 2012) ......................................................................25

*Wood v. Briarwinds Condo. Ass'n Bd. of Dirs.*,
   369 F. App'x 1 (11th Cir. 2010)..................................................................21

## Rules and Statutes

Fair Housing Act, 42 U.S.C. § 3601 *et seq.*......................................................1
Fed. R. Civ. P. 56(a)..........................................................................................11
24 C.F.R. Pt. 91 .................................................................................................6

## INTRODUCTION

This lawsuit is about "allegations relating to discriminatory subprime mortgage lending [that] begin in 2003 and end in 2007." (Order Den. Mot. Dismiss at 26, ECF No. 23; Compl. ¶¶ 138-140, 142-44, 243, 313, ECF No. 1.) Plaintiffs DeKalb, Fulton, and Cobb Counties (the "Counties") did not file their claim under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), until October 18, 2012. The FHA has a two-year statute of limitations. The Court found that, in their Motion to Dismiss, the HSBC Defendants "carried their initial burden of making a showing that the statute of limitations is applicable." (Order Den. Mot. Dismiss at 26.) Accordingly, the Court allowed limited discovery to determine whether "the facts supporting the claim alleged were discovered or could have been discovered through the exercise of reasonable diligence prior to October 18, 2010[.]" (Scheduling Order at 2-3, ECF No. 38.) The limited discovery commenced with the filing of declarations by Plaintiffs regarding the timing of their knowledge. (Order Den. Mot. Dismiss at 33.)

Plaintiffs' sworn declarations assert that the DeKalb, Fulton, and Cobb County Boards of Commissioners ("Boards") "first learned as a general matter that the high rate of foreclosures in the Count[ies] might have a connection to subprime mortgage lending that may have occurred in the Count[ies]" on April 13, 2010, July 21, 2010, and September 27, 2010, respectively. (Stmt. Mat. Facts ¶¶ 1, 35, 72.) At meetings occurring

1

on those dates, the declarants state that the Boards retained or considered retaining outside counsel to pursue their claim.  (*Id.* ¶¶ 2, 36, 73.)  This alone establishes that the Counties were aware of the claim and supporting facts prior to October 18, 2010.

The declarations seek to blunt the dispositive impact of that knowledge by suggesting that it was somehow incomplete until the Counties precisely understood "the factual and legal basis for the County's FHA claims against Defendants" after being presented with a draft complaint by outside counsel.  (*Id.* ¶ 3; *see also id.* ¶¶ 4, 37-38, 74-75.)  The limitations clock does not begin to run, however, upon the presentment of a draft complaint.  It begins to run once the facts supportive of a cause of action were, or should have been, apparent under a reasonable diligence standard.  The implied assertion that the "knew or should have known" requirement does not take hold until counsel presents a draft complaint is plainly specious.

Insofar as the Counties suggest that they could not have known about their claim within the limitations period, they only highlight its remoteness.  In that regard, the Supreme Court's decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), decided after this Court's ruling on HSBC's Motion to Dismiss, makes clear that statutory causes of action require that a plaintiff's injury be (i) within the zone of interest Congress intended the statute to protect and (ii) proximately caused by a violation of the statute.  As a federal district court in this Circuit held nearly two weeks

2

ago in dismissing with prejudice claims filed by the City of Miami against lenders based on virtually identical theories of liability, the FHA's purpose is to protect victims of discrimination in housing transactions and integration in housing patterns, not the County's tax receipts and budgets for government services.[1]  Moreover, the lapse of years between the alleged lending practices at issue and the Counties' purported ability to connect the dots to their injuries highlights the impossibility of establishing proximate causation.

It also is clear from the limited discovery obtained from Plaintiffs pursuant to the Court's Scheduling Order that the Boards were aware of the facts forming the basis of their claim—the purported connection between subprime loans and foreclosures, alleged predatory and discriminatory origination practices, and even increased expenditures for government services and decreased property values—and took steps to address them years before counsel of record persuaded the Boards to retain them to develop this lawsuit.  Thus, there is a clear and incontrovertible factual record demonstrating that Plaintiffs may not excuse their untimely filing by claiming ignorance.

---

[1] *See* Order Granting Motion to Dismiss, *City of Miami v. Bank of Am. Corp.*, No. 1:13-cv-24506-WPD (S.D. Fla. July 9, 2014), ECF No. 71; Order Granting Motion to Dismiss, *City of Miami v. Wells Fargo & Co.*, No. 1:13-cv-24508-WPD (S.D. Fla. July 9, 2014), ECF No. 49 (incorporating by reference reasoning in *City of Miami v. Bank of Am. Corp.*); Order Granting Motion to Dismiss, *City of Miami v. Citigroup Inc.*, No. 13-cv-24510 (S.D. Fla. July 9, 2014), ECF No. 64 (same).

## SUMMARY OF MATERIAL FACTS

The Counties were aware of the basis of their claim at least as early as 2008, and admit they were aware of their theory of liability no later than September 2010, more than two years before this action was filed.[2]

DeKalb, Fulton, and Cobb Counties submitted declarations stating that, by April 13, 2010, July 21, 2010, and September 27, 2010, respectively, they (i) were aware of the connection between "high rate[s] of foreclosures" and "subprime mortgage lending that may have occurred" (Stmt. Mat. Facts ¶¶ 1, 35, 72), and (ii) had either retained or considered retaining counsel of record to press the theory of liability in this case (*id.* ¶¶ 2, 36, 73).  These declarations alone demonstrate that the claim is time-barred because each of the Counties was aware of the basis of its claim—and even the theory of liability itself—prior to October 18, 2010.[3]

_____

[2] Plaintiffs have maintained in discovery that only the knowledge of Board Commissioners may be attributed to them.  However, Plaintiffs identified, in response to HSBC's interrogatory, 94 persons "likely to have knowledge" of matters relating to timing, and yet their productions appeared to include documents collected from fewer than 25 individuals.  Plaintiffs' declarations and the factual record demonstrate overwhelmingly that the claim is time-barred.  Insofar as the case proceeds, HSBC will have been prejudiced both by Plaintiffs' position on relevant persons and by their apparent disavowal of more than two-thirds of the persons whose knowledge even they concede should be imputed to them.

[3] Plaintiffs' counsel communicated "legal analysis" relating to the "viability of [the FHA] to generally address the foreclosure crisis" with DeKalb County beginning February 1, 2010, Fulton County beginning June 24, 2010, and Cobb County beginning September 1, 2010.  (Stmt. Mat. Facts ¶¶ 5, 39, 76; *see also id.* ¶¶ 6, 40, 77-79.)

4

The connection between subprime lending and foreclosures also pervaded public discussion, including regional media coverage, in 2007, 2008 and 2009. (*See id.* ¶¶ 51-52, 94-105.)[4]  As discussed below, and contrary to their declarations, the Boards were aware of and began to address the facts forming the basis of their claim during that time period.

**DeKalb County.**  In response to DeKalb County's high rate of foreclosures and the "mortgage crisis," the DeKalb County Board created a "Foreclosure Prevention and Intervention Task Force" in April 2008. (*Id.* ¶¶ 7-8; *see also id.* ¶ 7.)  At its meetings, the Task Force specifically addressed predatory and discriminatory subprime lending, and the resultant "defacing" of property values. (*Id.* ¶ 10; *see also id.* ¶ 9.)  The Task Force published a report on September 16, 2008, which the DeKalb County Board adopted on November 18, 2008. (*Id.* ¶¶ 11-12, 14.)  The report concluded:

> Subprime loans are more than 10 times likely to end in foreclosure than standard loans, but more than one-third of borrowers in the subprime market could qualify for traditional mortgages.  Mortgage and personal credit financing problems adversely affect African [American] and Hispanic borrowers in Georgia.  They are more likely to have subprime loans, even if they have higher incomes. … In 2005, approximately 19% of Caucasian borrowers took subprime loans versus 48% of African American and Hispanic borrowers.  The trend continues and worsens in 2008.

(*Id.* ¶ 13.)  In October 2008, the DeKalb County Board reviewed a study analyzing home

---

[4] HSBC vigorously denies the Counties' allegations relating to its lending practices, the merits of which are not at issue in this Motion.

sale prices and appraised home values in neighborhoods with high rates of foreclosure. (*Id.* ¶¶ 15-19.)  In November 2008—DeKalb County submitted a Neighborhood Stabilization Program ("NSP") application to the U.S. Department of Housing and Urban Development ("HUD"), which was authorized by the DeKalb County Board and signed by the County's Chief Executive Officer.  (*Id.* ¶¶ 20-21, 24.)  It identified geographic areas with the most foreclosures, subprime loans, and defaults and delinquencies.  (*Id.* ¶ 22.)  DeKalb County stated that it had been documenting these areas based on local data for the last 15 years, and had used the Atlanta Foreclosure Report to sort advertised foreclosures by location and sales price on a monthly basis since 1993.  (*Id.* ¶ 23.)  In connection with the grant funds received, Metro Fair Housing completed an Analysis of Impediments to Fair Housing ("AI")[5] on behalf of DeKalb County approximately one year later (in November 2009) which addressed "predatory lending activities that have contributed to the foreclosure crisis."  (*Id.* ¶¶ 25-26.)

At a meeting on July 27, 2010, the DeKalb County Board adopted a resolution aimed at making violations of Georgia's Fair Lending Act a felony.  (*Id.* ¶¶ 27-28.)  At the same meeting, it adopted an ordinance establishing a foreclosure registry, finding that "an unprecedented high number of properties foreclosed within DeKalb County have led

---

[5] An AI is a review of policies, practices, or procedures that interfere with fair housing choice, which certain HUD grant fund recipients are required to complete.  *See* 24 C.F.R. Pt. 91.

to an influx of abandoned residential and commercial properties within the County." (*Id.* ¶¶ 9, 29, 31; *see also id.* ¶ 30.)  The ordinance further stated that "the lack of adequate maintenance and security of foreclosed residential and commercial properties adversely affect the aesthetic and economic attributes of communities," and that the Board "desires to protect residential and commercial areas from becoming blighted due to the lack of adequate maintenance and security of foreclosed" properties.  (*Id.* ¶ 31.)

At the same meeting, the DeKalb County Board considered a 90-day moratorium on foreclosures based on conclusions that "DeKalb is facing an unprecedented threat to its economy . . . [because] high foreclosure rates have adversely affected property values, and will have even greater adverse consequences as foreclosure rates continue to rise." (*Id.* ¶¶ 32-33; *see also id.* ¶ 34.)  The DeKalb County Board further based its consideration of the moratorium on conclusions that "DeKalb County is experiencing increased homelessness, unemployment, crime and the overall decline of neighborhoods as a result of foreclosures," and that "foreclosures adversely affect the availability of capital, the demand for housing, the value of real estate, and more importantly, the ability of homeowners to keep their homes and communities viable."  (*Id.* ¶ 33.)

**Fulton County.**  Action plans relating to NSP applications submitted by Fulton County to HUD in 2006, 2007, and 2008 stated that the County will "continue to contract services from Metro Fair Housing to administer tests and investigate any and all forms of

7

discrimination related to housing." (*Id.* ¶ 41.)  In November 2008, the Fulton County

Board approved an amendment to an NSP grant action plan, which identified the

County's geographic areas of greatest need according to levels of foreclosure and

subprime loans.  (*Id.* ¶¶ 47-48; *see also id.* ¶¶ 42-46.)  The County's 2009 NSP

application used the same criteria.  (*Id.* ¶¶ 49-50.)

In December 2008, the Fulton County Board adopted a resolution regarding tax

assessment criteria in neighborhoods with high foreclosure rates (*id.* ¶ 53), which stated

that foreclosures have a "destabilizing influence in neighborhoods," "sometimes become

havens for criminals" (*id.* ¶ 54), and "may lead some neighborhoods to decay as

homeowners have less money for maintenance and some homes may become vacant if

their owners move because they cannot afford to pay the property taxes" (*id.* ¶ 55).  One

Commissioner stated:  "What's happening is that the assessed value of the homes that are

in these foreclosed neighborhoods is higher than the median sales price of houses in that

same neighborhood.  So what you're having is just a further deterioration of the

neighborhood." (*Id.* ¶ 56.)

Subsequently, in April 2010, the Fulton County Board received a report

acknowledging that "we all know that any deteriorated or distressed properties can affect

the value of surrounding neighborhoods."  (*Id.* ¶ 64; *see also id.* ¶¶ 62-63, 65.)  Citing a

June 2009 National Community Reinvestment Coalition report, a 2011 Fulton County AI

stated that minority borrowers were "most at risk for receiving a poorly underwritten high-cost loan." (*Id.* ¶ 70; *see also id.* ¶ 69.) The AI further stated, relying on a November 2009 study from the Economic Policy Institute, that "segregated communities seem to be subject to 'reverse redlining,' that is, the targeting of such neighborhoods by lenders selling high-cost mortgage instruments . . . Examining [foreclosure data for Fulton County], one sees that, generally speaking, the greater proportion of the minority population within a Census Tract, the greater the proportion of subprime mortgages." (*Id.* ¶ 71.)

In December 2009, the Fulton County Board approved a resolution urging the Georgia General Assembly to amend state law to make predatory lending in the sale of residential housing a felony. (*Id.* ¶ 59; *see also id.* ¶¶ 57-58, 60-61.) The resolution had been developed by the Fulton-DeKalb Commissioners' Committee on Housing. (*Id.* ¶¶ 58, 60.) In April 2010, the Fulton County Community Zoning Board recommended that the County require registration of vacant properties, relying on a finding that "[a]bandoned and vacant properties result in a diminished quality of life and result in decreased property values. . . Reducing the negative effects of abandoned and vacant properties depends heavily upon the ability of Fulton County to contact the appropriate property owners, lien holders or financial institutions of the vacant and/or abandoned residential property." (*Id.* ¶¶ 66-67.) As a consequence, the Fulton County Board

adopted an ordinance in May 2010 requiring that owners of abandoned buildings obtain a certification.  (*Id.* ¶ 68.)

**Cobb County.**  In August 2007, a Cobb County AI noted that "[t]he current high rate of foreclosures can be attributed, in many instances, to [. . .] 'loose' underwriting and the use of adjustable rate mortgages to benefit many low to middle income homebuyers who are inadequately prepared financially to buy houses that are truly not affordable for them."  (*Id.* ¶ 81; *see also* ¶ 80.)  A neighborhood revitalization analysis prepared for the Cobb County Board relied on this AI.  (*Id.* ¶ 82.)  A 2008 Cobb County performance evaluation submitted to HUD, and relying on the AI, stated that one of "the primary impediments to fair housing in Cobb County . . . [is] Banking Practices that Limit Fair Housing Choice."  (*Id.* ¶ 83.)

Cobb County's 2008 NSP stated that the County had identified areas of greatest need according to foreclosure levels and incidence of subprime loans.  (*Id.* ¶¶ 85, 87; *see also id.* ¶¶ 84, 86.)  The plan further stated that "Cobb has been obtaining detailed foreclosure information from local and national sources," and attached a map identifying and entitled "Foreclosure Hot Spots."  (*Id.* ¶ 88.)

**The City of Atlanta.**  The City of Atlanta was part of a Foreclosure Litigation Working Group created in September 2008.  (*Id.* ¶ 89.)  Its members signed a Common Interest Agreement "to jointly devise and implement legal strategies to proactively

address the foreclosure crisis [and] to hold lenders accountable[.]"  (*Id.* ¶ 89.)  The

Atlanta City Council also authorized retention of a law firm to pursue a civil action for

mortgage lending practices on April 20, 2009—more than a year before the Counties

claim they were even aware of any relationship between subprime lending and

foreclosures.  (*Id.* ¶ 90; *see also id.* ¶¶ 91-92.)  The City of Atlanta is situated within

Fulton and DeKalb Counties (*id.* ¶ 93), and the Counties had access to the same facts.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(a).  Here, HSBC's "burden is discharged merely by 'showing

. . . that there is an absence of evidence to support an essential element of the nonmoving

party's case.'"  *FDIC v. Skow*, 955 F. Supp. 2d 1357, 1367-1368 (N.D. Ga. 2012) (Jones,

J.) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once HSBC "has

adequately supported its motion," the Counties bear "the burden of showing that

summary judgment is improper by coming forward with specific facts showing a genuine

dispute."  *Skow*, 955 F. Supp. 2d at 1368 (citing *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986)).

## **ARGUMENT**

### I.     **THE COUNTIES' CLAIM IS TIME-BARRED.**

Plaintiffs filed their Complaint on October 18, 2012, bringing a single claim under the FHA, which has a two-year statute of limitations.  (Order Den. Mot. Dismiss at 25.)  As the Court explained in ruling on Defendants' Motion to Dismiss, Plaintiffs' claim must be based on conduct that occurred on or after October 18, 2010.  (*Id.* at 26.)  However, "Plaintiffs' allegations relating to discriminatory subprime mortgage lending begin in 2003 and end in 2007," and thus are well outside of the limitations period.  (*Id.*)  Accordingly, the Court found that Defendants "carried their initial burden of making a showing that the statute of limitations defense is applicable."  (*Id.*) (quoting *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990)).  The Court further found that whether "the facts supporting the claim alleged were discovered or could have been discovered through the exercise of reasonable diligence prior to October 18, 2010," should be determined at summary judgment after an evidentiary submission regarding the timing of Plaintiffs' knowledge.  (Order Den. Mot. Dismiss at 33; Scheduling Order at 2-3.)

The dates as to which the Counties stipulate that they had knowledge of their claim—April 13, 2010, July 21, 2010, and September 27, 2010 (Stmt. Mat. Facts ¶¶ 1, 35, 72)—demonstrate that the lawsuit was filed too late.  Moreover, the factual record

12

demonstrates that, contrary to their evidentiary submissions, the Boards were paying

attention much earlier.  Years before outside counsel approached, they were aware of and

taking appropriate action to address the facts forming the basis of their claim—"predatory

lending" (Compl. ¶ 5), "reduced property values on foreclosed properties and

surrounding properties" (*id.* ¶ 295), vacant homes "that have not been cared for, have

been vandalized and/or have provided a location for illegal activities," and "boarding up

or tearing down vacant properties" (*id.* ¶ 301).

Hoping to avoid application of the statute of limitations, Plaintiffs argue that they

are entitled to the continuing violation doctrine and equitable tolling.  (Pls.' Opp'n Mot.

Dismiss at 7-11, ECF No. 17.)  Both doctrines are inapplicable because the Counties

knew, or through the exercise of reasonable diligence should have known, of the basis of

their claim prior to October 18, 2010.  *See, e.g.*, *Hipp v. Liberty Nat'l Life Ins. Co.*, 252

F.3d 1208, 1222 (11th Cir. 2001) (continuing violation doctrine inapplicable if "facts

supportive of the cause of action are or should be apparent to a reasonably prudent person

similarly situated"); *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (equitable tolling is

inapplicable if plaintiff has not "pursu[ed] his rights diligently").

## A.   The Continuing Violation Doctrine Does Not Apply.

As this Court explained, "[t]he continuing violation doctrine 'is premised on the

equitable notion that the statute of limitations ought not to begin to run until facts

13

supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated.'"  (Order Den. Mot. Dismiss at 32) (quoting *Hipp*, 252 F.3d at 1222)); *see also Hawkins v. Hamlet, Ltd.*, 296 F. App'x 918, 918 (11th Cir. 2008) (district court properly refused to apply continuing violation doctrine to FHA claim where plaintiff had knowledge of claim prior to limitations period).

This Circuit has "limited the application of the continuing violation doctrine to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred."  (Order Den. Mot. Dismiss at 32) (quoting *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1335 (11th Cir. 2006)); *see also Kellat v. Douglas Cnty.*, No. 10-15713-D, 2011 U.S. App. LEXIS 26442, at *4-5 (11th Cir. 2011).  The continuing violation is unavailable where "an event or series of events should have alerted a reasonable person to act to assert his or her rights" timely.  (Order Den. Mot. Dismiss at 32) (quoting *Ctr. for Biological Diversity*, 453 F.3d 1331 at 1335); *see also Hipp*, 252 F.3d at 1222; *Kellat v. Douglas Cnty.*, No. 1:10-CV-2250-WSD, 2010 U.S. Dist. LEXIS 144803, at *4-5 (N.D. Ga. Sept. 27, 2010); *Price v. Owens*, 634 F. Supp. 2d 1349, 1354 (N.D. Ga. 2009).

Reasonable diligence is "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation."  *Edwards v. Hyundai Motor Mfg. Ala., LLC*, 701 F. Supp. 2d 1226, 1234

14

(M.D. Ala. 2010); *see also Riddle v. Bank of Am. Corp.*, No. 12-1740, 2013 U.S. Dist. LEXIS 163526, at *16-17 (E.D. Pa. Nov. 18, 2013) ("Reasonable diligence means that a plaintiff pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others") (internal quotation omitted). The continuing violation doctrine "does not exist to give a second chance" to a plaintiff who allowed a "claim to lapse." *Carter v. West Publ'g Co.*, 225 F.3d 1258, 1264 (11th Cir. 2000); *see also Obester v. Lucas Assocs.*, No. 1:08-CV-03491-MHS-AJB, 2010 U.S. Dist. LEXIS 144161, at *102 (N.D. Ga. Aug. 2, 2010). In dismissing virtually identical cases brought by the City of Miami against three lenders, the court held that the city was not entitled to rely on the continuing violation doctrine based on conclusory allegations of continuing conduct without identifying originations during the limitations period.[6]

## 1. The Counties Admit Knowledge of the Claim Outside the Limitations Period.

Each of the Counties admits that, prior to October 18, 2010, it communicated with outside legal counsel and understood that the high rate of foreclosures may be connected to subprime lending, and they either retained or considered retaining counsel to pursue

---

[6] *See* Order Granting Motion to Dismiss, *City of Miami v. Bank of Am. Corp.*, No. 1:13-cv-24506-WPD (S.D. Fla. July 9, 2014), ECF No. 71; Order Granting Motion to Dismiss, *City of Miami v. Wells Fargo & Co.*, No. 1:13-cv-24508-WPD (S.D. Fla. July 9, 2014), ECF No. 49; Order Granting Motion to Dismiss, *City of Miami v. Citigroup Inc.*, No. 13-cv-24510 (S.D. Fla. July 9, 2014), ECF No. 64.

this lawsuit.  (Stmt. Mat. Facts ¶¶ 1-2, 35-36, 72-73.)  These admissions demonstrate that "the facts supporting the claim alleged were discovered or could have been discovered through the exercise of reasonable diligence prior to October 18, 2010."  (Scheduling Order at 2-3.)[7]

The Counties incorrectly suggest that "awareness" means presentment of a draft complaint by counsel.  (Stmt. Mat. Facts ¶¶ 3-4, 37-38, 74-75.)  The statute of limitations, however, begins to run when the "facts supportive of the cause of action . . . [are] apparent to a reasonably prudent person similarly situated."  *Hipp*, 252 F.3d at 1222 (quotation omitted); *Bradley v. Fla. Dep't of Transp.*, No. 4:01CV342-RH, 2002 U.S. Dist. LEXIS 27475, at *34 (N.D. Fla. Nov. 11, 2002) (where plaintiff knew of basis of her claim, "continuing violation doctrine will not salvage her otherwise untimely complaints").[8]  Courts have rejected attempts to avoid the statute of limitations by relying on communications with counsel.  For example, in a case alleging that defendants had violated the Real Estate Settlement Procedures Act in originating plaintiffs' mortgages, the court granted defendants' motion for summary judgment on the statute of limitations after discovery regarding the timing of plaintiffs' knowledge.  *Riddle*, 2013 U.S. Dist.

---

[7] *See also Hipp*, 252 F.3d at 1222; *Ctr. for Biological Diversity*, 453 F.3d at 1335; *Kellat v. Douglas Cnty.*, 2010 U.S. Dist. LEXIS 144803, at *6.

[8] *See also* Scheduling Order at 2-3 (Defendants shall move for summary judgment regarding whether "the *facts* supporting the claim alleged were discovered or could have been discovered through the exercise of reasonable diligence prior to October 18, 2010") (emphasis added).

LEXIS 163526, at *28.  The court rejected plaintiffs' argument that "prior to lawyerly intervention, they had no reason to suspect that they" had a claim.  *Id.* at *20.  The Court held that plaintiffs were not entitled to tolling of the statute of limitations where "they elected to pursue litigation after they were pursued by lawyers who believed that they may have claims."  *Id.* at *17; *see also* Memorandum at 10-11, *Hill v. Flagstar*, No. 12-cv-2770 (E.D. Pa. June 26, 2014), ECF No. 116 (that plaintiff "did nothing to investigate or pursue his claim until prompted by lawyers leads this Court to conclude that he failed to exercise" reasonable diligence).

The Counties' argument also must fail because it "renders the statute of limitations a nullity," providing "an unlimited time to resuscitate stale claims" and "no way to determine when the clock begins to run on their claims."  *Riddle*, 2013 U.S. Dist. LEXIS 163526, at *20-21.  Indeed, under the Counties' reasoning, "any plaintiff who requires the assistance of counsel to discover the existence of a claim, including plaintiffs who conduct virtually no diligence, would be automatically entitled to equitable tolling of the statute of limitations for an indefinite period of time until that plaintiff retains counsel."  *McCarn v. HSBC USA, Inc.*, No. 1:12-CV-00375-LJO-SKO, 2012 U.S. Dist. LEXIS 162257, at *21-22 (E.D. Cal. Nov. 9, 2012).[9]

---

[9] *See also Abbotts v. Campbell*, 551 F.3d 802, 806 (8th Cir. 2008) ("[Plaintiffs] gave no thought to [the case] until an attorney's solicitation letter touting a previous success arrived eleven years after the loss.  The record reflects indifference and opportunism

17

**2.      The Counties Were Aware of Facts Supportive of the Claim Outside the Limitations Period.**

The Counties were, or through the exercise of reasonable diligence should have been, independently aware of the basis of their claim prior to October 18, 2010, and well before communicating with outside counsel.  Since at least 2008, each of the Counties has studied and taken action to address the geography of alleged discriminatory subprime lending, foreclosures, vacant and abandoned properties, and their impact on property values and the costs of providing government services.  *See generally* Summ. Mat. Facts. Against this backdrop, the Counties' assertion that the "first time" they received "*any information* that the high rate of foreclosures in the County *might* have a connection to subprime lending that *may* have occurred in the county" (Stmt. Mat. Facts ¶ 35; *see also id.* ¶¶ 1, 72), was after being contacted by counsel in 2010 is, at best, disingenuous—and more likely reflects a failure to make an appropriate inquiry before filing the declarations.

Inasmuch as the Counties suggest that they could not have brought a claim against HSBC prior to October 18, 2010, they cannot identify a single fact occurring after that date that would have put them on notice of a previously undiscoverable claim.  The HMDA data on which the Counties rely is published annually,[10] and other municipalities

rather than reasonable diligence."); *Salois v. Dime Sav. Bank of N.Y.*, 128 F.3d 20, 26 (1st Cir. 1997) (plaintiffs ineligible for equitable tolling where they waited approximately six years after closing to consult with attorney).

[10] *See, e.g.*, Compl. ¶¶ 138-40, 268-69, 298 ¶¶ 138-40, 268-69, 298.

have advanced the same theory of liability since 2008.  *See Mayor of Baltimore v. Wells Fargo Bank, N.A.*, No. 1:08-cv-00062 (D. Md.) (filed Jan 8, 2008); *City of Birmingham v. Citigroup Inc.*, No. CV-09-BE-467-S (N.D. Ala.) (filed March 10, 2009); *City of Memphis v. Wells Fargo Bank, N.A.*, No. 09-02857-STA (filed Dec. 30, 2009).  In addition, the City of Atlanta banded together with other municipalities in September 2008 "to jointly devise and implement legal strategies to proactively address the foreclosure crisis [and] to hold lenders accountable[.]"  (Stmt. Mat. Facts ¶ 89.)  The Atlanta City Council also authorized retention of a law firm to pursue a civil action for mortgage lending practices on April 20, 2009—more than a year before the Counties claim they were even aware of any relationship between subprime lending and foreclosures.  (*Id.* ¶¶ 90-92.)  With any reasonable level of diligence, the Counties could have done the same.

## B.   The Equitable Tolling Doctrine Does Not Apply.

For the same reasons that Plaintiffs are not entitled to application of the continuing violation doctrine, Plaintiffs also are not entitled to equitable tolling.  Equitable tolling "is an extraordinary remedy" that "is limited to rare and exceptional circumstances[.]" *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009); *see also* (Order Den. Mot. Dismiss at 33 n.22) (recognizing equitable tolling is an extraordinary remedy).  To establish the right to equitable tolling, a plaintiff bears the burden of establishing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

19

stood in his way."  (Order Den. Mot. Dismiss at 33 n.22) (quoting *Pace*, 544 U.S. at 418);

*see also Hunter*, 587 F.3d at 1308 ("equitable tolling is available only 'when a movant

untimely files because of extraordinary circumstances that are both beyond his control

and unavoidable even with diligence.'") (quoting *Lawrence v. Florida*, 421 F.3d 1221,

1226 (11th Cir. 2005)).[11]

The Counties did not pursue their rights diligently throughout the time period they

seek to have tolled.  *See Arthur v. Thomas*, 739 F.3d 611, 624 (11th Cir. 2014) ("the

record did not reflect any 'specific actions'" reflecting diligence).  To the contrary, the

Counties admit that they retained or considered retaining counsel for the specific purpose

of pursuing this lawsuit more than two years before filing.  (Stmt. Mat. Facts ¶¶ 1-2, 35-

36, 72-73.)  The record also shows that the Counties were aware of the supportive facts

more than four years before filing.  *See generally* Summ. Mat. Facts.  Further, the

Counties can point to no legally cognizable event occurring after October 18, 2010 that

would reveal a previously undiscoverable claim.  No extraordinary circumstances—"both

beyond [plaintiff's] control and unavoidable even with diligence"—prevented timely

filing. *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999); *see also Obester*,

---

[11] Plaintiffs also have asserted that Defendants fraudulently concealed Plaintiffs' claim.
(Pls.' Opp'n Mot. Dismiss at 10.)  However, "when a limitations period is tolled because
of fraudulent concealment of facts, the tolling ceases when those facts are, or should have
been, discovered by the plaintiff."  *Credit Suisse Sec. (USA) LLC v. Simmonds,* 132 S. Ct.
1414, 1420 (2012).

2010 U.S. Dist. LEXIS 144161, at *91 n.17.

### C.   The Counties Allege No Wrongful Lending Practices Within the Limitations Period.

In their opposition to Defendants' Motion to Dismiss, the Counties relied on the continuing violation doctrine and equitable tolling to argue that their claim was timely notwithstanding that it relates to mortgages originated between 2003 and 2007. (Pls.' Opp'n Mot. Dismiss at 10) (citing continuing violation authority and stating "[e]ven if the continuing violation doctrine somehow could be found not to apply, the doctrine of equitable tolling" applies). The Counties later asserted that they "did not argue in the Brief in Opposition to Defendants' Motion to Dismiss for application of the common law continuing violation doctrine." (Br. Supp. Pls.' Mot. Partial Summ. J. at 3, ECF No. 50-1; *see also* Br. Supp. Mot. Clarification at 4 n.2, ECF 57-1.) Plaintiffs' latest argument is that they need not rely on the continuing violation doctrine because the Complaint alleges ongoing continuing violations. (Br. Supp. Pls.' Mot. Partial Summ. J. at 3-4.)

Contrary to the Counties' latest assertion, "a plaintiff who knowingly fails to seek relief is exactly the danger Congress was trying to protect against in establishing the statute of limitations. This court cannot allow Plaintiffs to save their time barred claims by claiming a continuing violation." *Butler v. Matsushita Commc'n Indus. Corp.*, 203 F.R.D. 575, 583 (N.D. Ga. 2001); *see also Wood v. Briarwinds Condo. Ass'n Bd. of Dirs.*, 369 F. App'x 1, *4 (11th Cir. 2010) (refusing to apply doctrine to an FHA claim

where plaintiff was aware of alleged violation more than two years prior to filing); *Steele v. City of Port Wentworth*, No. CV405-135, 2008 U.S. Dist. LEXIS 20637, at *16 (S.D. Ga. Mar. 17, 2008) (courts give "considerable weight to a plaintiff's awareness of his or her rights and the duty to bring a timely claim").

Thus, even if discriminatory conduct is alleged to continue into the statutory filing period,[12] the operative question is whether a plaintiff was aware of an alleged claim based on such conduct earlier. *See Roberts v. Gadsden Mem'l Hosp.*, 850 F.2d 1549, 1550 (11th Cir. 1988). Alleged discriminatory acts pursued out of time are "barred, even if they are related to timely discrete acts, and [plaintiff] may not seek to resurrect claims based on these acts." *Obester*, 2010 U.S. Dist. LEXIS 144161, at *102.[13] This Court has already held that the Counties' claim arises out of "allegations relating to discriminatory subprime mortgage lending [that] begin in 2003 and end in 2007," and HSBC has "carried their initial burden of making a showing that the statute of limitations is

---

[12] The Complaint alleges that HSBC's servicing practices were of poor quality—that it "fail[ed] to respond" and "fail[ed] to have adequate internal controls" for white and minority borrowers alike—but there are no allegations that they were discriminatory in violation of the FHA. (*See* Mot. Dismiss at 36 n.15, ECF No. 16-1; Compl. ¶¶ 281-83.) To the contrary, Plaintiffs specifically allege that HSBC has taken action "to ensure that Defendants' mortgage servicing operations were operated in a safe and sound manner and in compliance with the terms of the mortgage loan documentation and related agreements with borrowers." (Compl. ¶ 289; Order Den. Mot. Dismiss at 27 n.17.)

[13] *See also Moskowitz v. Trs. of Purdue Univ.*, 5 F.3d 279, 281-82 (7th Cir. 1993) (plaintiff "may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one").

applicable." (Order Den. Mot. Dismiss at 26.) As a result, insofar as the Counties have abandoned the continuing violation doctrine, their claim is limited to originations on or after October 18, 2010. There are no allegations in the Complaint relating to originations during this time period.

## II.   THE COUNTIES' STATEMENTS REGARDING TIMING DISQUALIFY THEIR STANDING TO PURSUE THE CLAIM.

The Counties' sworn statements that it took years for them to connect the dots between the alleged lending practices at issue and their injuries only highlights their failure to satisfy the requirements for bringing a statutory cause of action, which the Supreme Court recently clarified in *Lexmark*.[14] The Court held that a plaintiff bringing a statutory cause of action must have an injury (i) within the "zone of interest" that the statute was designed to protect, and (ii) proximately caused by a violation of the statute. *Lexmark*, 134 S. Ct. at 1388. As the Court explained, "the breadth of the zone of interests varies according to the provisions of the law at issue." *Id.* The FHA's stated policy is "to provide, within constitutional limitations, for fair housing throughout the United States," 42 U.S.C. § 3601, and the purpose of this policy is to promote integrated residential housing patterns. *See, e.g.*, *Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1141 (S.D. Fla. 2004) (the purpose of the FHA is to "promote open,

---

[14] Prior to *Lexmark,* courts held that standing under the FHA extended to the limits allowed by Article III. *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982).

integrated residential housing patterns and to prevent the increase of segregation, in

ghettos, of racial groups…."). The zone of interest "exclude[s] plaintiffs who might

technically be injured in an Article III sense but whose interests are unrelated to the

statutory prohibitions." *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 870 (2011).[15]

     The City of Miami's virtually identical theory of liability under the FHA was

dismissed with prejudice nearly two weeks ago for this reason. The court held that the

city's economic injuries fell outside the zone of interest. Order Granting Motion to

Dismiss at 8, *City of Miami v. Bank of Am. Corp.*, No. 1:13-cv-24506-WPD (S.D. Fla.

July 9, 2014), ECF No. 71 (there is no standing for "plaintiffs who show no more than an

economic interest which is not somehow affected by a racial interest" (citing *Nasser v.*

*City of Homewood*, 671 F.2d 432, 437 (11th Cir. 1982)).[16] In other words, the FHA does

---

[15] The Supreme Court has found standing beyond persons alleged to have been victims of
discrimination only for loss of the benefit of integrated housing. *See, e.g.*, *Trafficante v.*
*Metro. Life Ins. Co.*, 409 U.S. 205, 210 (1972) ("important benefits from interracial
associations"); *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 113 (1979)
("integrated character"); *Havens Realty Corp.*, 455 U.S. at 375 ("benefits that result from
living in an integrated community").

[16] *See also* Order Granting Motion to Dismiss, *City of Miami v. Wells Fargo & Co.,* No.
13-cv-24508 (S.D. Fla. July 9, 2014), ECF No. 49; Order Granting Motion to Dismiss,
*City of Miami v. Citigroup Inc.*, No. 13-cv-24510 (S.D. Fla. July 9, 2014), ECF No. 64.
*But see* Order Denying Defendants' Motion to Dismiss and Denying Defendants' Motion
to Strike at 9-13, *City of Los Angeles v. Wells Fargo & Co.*, No. 13-cv-9007 (C.D. Cal.
May 28, 2014), ECF No. 37; Court Order at 8-10, *City of Los Angeles v. Bank of Am.*
*Corp.*, No. 13-cv-9046 (C.D. Cal. June 12, 2014), ECF No. 50; Order Denying
Defendants' Motion to Dismiss and Denying Defendants' Motion to Strike at 5 n.1, *City*
*of Los Angeles v. Citigroup Inc.*, No. 13-cv-9009 (C.D. Cal. June 9, 2014), ECF No. 47.

24

not protect against a municipal budget shortfall.

The court also held that the City of Miami failed to satisfy proximate causation. Order Granting Motion to Dismiss at 9-10, *City of Miami v. Bank of Am. Corp.*, No. 1:13-cv-24506-WPD (S.D. Fla. July 9, 2014), ECF No. 71.  In evaluating proximate causation, courts consider "whether the causal connection between the defendant's conduct and the injury is too remote for the law to countenance a recovery." *TSG Water Res., Inc. v. D'Alba & Donovan Certified Pub. Accountants, P.C.*, 260 F. App'x 191, 199 (11th Cir. 2007).  Proximate causation requires that a plaintiff would not have been injured "but for" the alleged violation of the statute—"a natural and continuous sequence, unbroken by any efficient intervening cause." *United States v. Laraneta*, 700 F.3d 983, 990 (7th Cir. 2012).  And it "bars suits for alleged harm that is too remote from the defendant's unlawful conduct." *Lexmark*, 134 S. Ct. at 1382.  The lapse of years here between the alleged violation of the FHA and the filing of this lawsuit similarly demonstrates the remoteness of the Counties' injuries.

## CONCLUSION

For the reasons set forth above, HSBC respectfully requests that the Court grant its Motion for Summary Judgment and enter judgment in favor of HSBC.

Dated: July 21, 2014                    Respectfully submitted,


                                        /s/ Valerie L. Hletko
                                        Andrew L. Sandler (*pro hac vice*)
                                        Valerie L. Hletko (*pro hac vice*)
                                        Ann D. Wiles (*pro hac vice*)
                                        Mark E. Rooney (*pro hac vice*)
                                        BUCKLEYSANDLER LLP
                                        1250 24th St. NW, Suite 700
                                        Washington, D.C.  20037
                                        (202) 349-8000 (Telephone)
                                        (202) 349-8080 (Facsimile)
                                        asandler@buckleysandler.com
                                        vhletko@buckleysandler.com
                                        awiles@buckleysandler.com
                                        mrooney@buckleysandler.com

                                        Therese G. Franzen (Bar No. 492367)
                                        D. Sharmin Arefin (Bar No. 511388)
                                        FRANZEN AND SALZANO, P.C.
                                        40 Technology Parkway South, Suite 202
                                        Norcross, Georgia 30092-2906
                                        (770) 248-2885 (Telephone)
                                        (770) 248-2883 (Facsimile)
                                        tfranzen@franzen-salzano.com
                                        sarefin@franzen-salzano.com

                                        *Attorneys for Defendants*

26

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1(D)</u>

I hereby certify that the foregoing brief was prepared using Times New Roman 14 point font, in accordance with Local Rule 5.1(C).

/s/ Valerie L. Hletko

27