# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

DEKALB COUNTY, FULTON     \*
COUNTY, and COBB COUNTY,    \*
GEORGIA,                         \*
                                    \*
          Plaintiffs,            \*
                                    \*
       v.                         \*          1:12-CV-03640-ELR
                                    \*
HSBC NORTH AMERICA HOLDINGS \*
INC., et al.,                        \*
                                    \*
          Defendants.         \*
                                    \*

_____

# O R D E R
_____

This case is presently before the Court on several pending motions. The Court's rulings and conclusions are set out below.

## I. Background

Plaintiffs DeKalb, Fulton, and Cobb Counties of Georgia filed a complaint against HSBC North America Holdings, Inc. and related entities[1] on October 18, 2012, alleging a single claim under the Fair Housing Act ("FHA"), 42 U.S.C.

---

[1] Defendants are named in the Complaint as follows: HSBC North America Holdings, Inc.; HSBC Investments North America Inc.; HSBC Finance Corporation; HSBC Mortgage Corporation; HSBC Mortgage Services Inc.; HSBC Mortgage Services Warehouse Lending Inc.; HSBC USA Inc.; HSBC Bank USA, National Association; Decision One Mortgage Company, LLC; HSBC Markets (USA) Inc.; HSBC Securities; and HSBC Corps. 1-50.

§ 3601 *et seq.*, for predatory and discriminatory residential mortgage lending and servicing activities.  The case was originally assigned to Judge Steve C. Jones, and he denied Defendants' Motion to Dismiss in an Order entered on September 25, 2014 (hereinafter, "September 25 Order").  The parties then engaged in limited discovery and filed cross motions for summary judgment.  While these motions were pending, the case was reassigned to the undersigned.  On March 3, 2015, the undersigned issued an Order (hereinafter, "March 3 Order") granting Plaintiffs' Motion for Partial Summary Judgment and denying Defendants' Motion for Summary Judgment.  Defendants then filed a Motion for Reconsideration of the March 3 Order, or, in the alternative, Leave to Appeal, and a Motion to Stay the Proceedings Pending Resolution of cases pending in the Eleventh Circuit Court of Appeals.   Without any stay having been granted, the parties continued to follow the Scheduling Order imposed by Judge Jones, with Defendants filing a Motion for Summary Judgment Regarding Improper Parties, and Plaintiffs filing a Motion to Compel and for Sanctions.  All of these motions are pending before the Court. Additionally, after the Eleventh Circuit issued certain rulings, the parties filed notices of supplemental authority further reiterating their positions.  Finally, the parties jointly moved the Court to abrogate the Scheduling Order set by Judge Jones and to set a status conference to discuss further management of the case after the Court rules on the pending motions, which the Court granted on October 21, 2015.

## II.  Defendants' Motion for Reconsideration

Defendants move the Court to reconsider its denial of Defendants' Motion for Summary Judgment and the grant of Plaintiffs' Partial Motion for Summary Judgment.  The decision to grant a motion for reconsideration is committed to the sound discretion of the district court. Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health and Rehab. Servs., 225 F.3d 1208, 1216 (11th Cir. 2000). Motions for reconsideration are to be filed only when "absolutely necessary" where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact. Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003); see also Kramer v. Conway, 962 F. Supp. 2d 1333, 1356 (N.D. Ga. 2013).

After careful consideration, and for the reasons set forth below, the Court grants Defendants' Motion for Reconsideration to correct clear errors of law. The March 3 Order concerned two issues, standing and the statute of limitations, which the Court will discuss in turn below.

### A. Standing

In the March 3 Order, the Court reaffirmed its finding that Article III standing had been met in this case.  In their Motion for Reconsideration, Defendants urge the Court to reconsider its ruling on standing based on the reasoning of the Southern

District of Florida in three decisions.[2]   After Defendants filed their Motion for

Reconsideration, the Eleventh Circuit reversed these district court cases on the issue

of standing.  City of Miami v. Bank of Am. Corp., 800 F.3d 1262, 1272-83 (11th

Cir. 2015); City of Miami v. Wells Fargo & Co., 801 F.3d 1265-67 (11th Cir. 2015);

City of Miami v. Citigroup Inc., 801 F.3d 1268, 1275-76 (11th Cir. 2015).   The

Court finds that its March 3 Order is consistent with the Eleventh Circuit rulings in

these cases and that Plaintiffs have satisfied the standing requirement at this time.

## B. Statute of Limitations

On the issue of the statute of limitations, Judge Jones found in the September

25 Order that Plaintiffs had alleged that Defendants had issued and serviced loans

discriminatorily, and therefore, Plaintiffs had alleged an illegal scheme.  Judge Jones

further decided that the specific nature of Defendants' activities with respect to the

loans, i.e., whether there was discrimination solely in the origination of the loans or

whether discrimination was committed as a separate act throughout the servicing of

the loans, was to be decided at summary judgment or trial, and these facts were

necessary in order to resolve the statute of limitations issue.  Furthermore, Judge

Jones determined if Plaintiffs intended to rely on the continuing violation doctrine,

---

[2] City of Miami v. Bank of Am. Corp., No. 13-24506-CIV, 2014 WL 3362348 (S.D. Fla. July 9, 2014); City of Miami v. Citigroup Inc., No. 13-cv-24510 (S.D. Fla. 2014); City of Miami v. Wells Fargo & Co., No. 13-cv-24508 (S.D. Fla. 2014).

Plaintiffs must show when they knew of the alleged discrimination, and that this issue first merited an opportunity for discovery.

The parties then filed cross motions for summary judgment, which were submitted to the undersigned, as the case had been reassigned.  In its March 3 Order, and pursuant to its inherent authority to revisit prior decisions, the Court found that contrary to Judge Jones' September 25 Order, there was no need to make a decision regarding the continuing violation doctrine because Plaintiffs had pled an ongoing pattern of discriminatory housing practices, including both origination of predatory loans and discriminatory servicing of loans, which was ongoing at the time of the complaint. The Court noted that although the continuing violation doctrine would normally toll a statute of limitations, which had already started to run, Plaintiffs' claim was not subject to the continuing violation doctrine because the statute of limitations had not yet begun since Defendants' alleged discriminatory practice had not yet terminated. The Court further instructed that merits discovery was necessary in order for the parties to discern the specific factual basis for the discrimination throughout the origination and servicing of the loans. The Court concluded that if merit discovery showed that Defendants continued to service and extend loans in a predatory and discriminatory manner into the two-year limitations period preceding the filing of the complaint, then the case could not be dismissed on statute of limitations grounds.  On the other hand, the Court noted that if the predatory lending

ended before the two-year period, and there was no evidence of discrimination in the servicing of the loans, Defendants may be able to successfully defeat Plaintiffs' claim as time-barred.   Finally, the Court added that "[w]here the violation is ongoing as of the time of the filing of the Complaint, it is immaterial when Plaintiff knew or should have known of the acts which would constitute an actionable offense."  March 3 Order, Doc. No. 75, at 8.  The Court granted Plaintiffs' Motion for Partial Summary Judgment and denied Defendants' Motion for Summary Judgment.[3]

As stated above, and after careful consideration, the Court grants Defendants' Motion for Reconsideration to correct clear errors of law with regard to the statute of limitations issue.  A grant of summary judgment to the Plaintiffs was in error on the statute of limitations because (1) it was procedurally improper and in violation of the Federal Rules; and (2) it was based on a clear error of law.

 First, the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact."  FED. R. CIV. P. 56(a).  A party asserting that a fact cannot be genuinely disputed must support the "assertion" by citing to particular parts of materials in the record or showing that the materials cited do not establish the absence or presence of a genuine dispute.  Id. at 56(c)(1)(A), (B).  In filing their motion for partial summary judgment, Plaintiffs merely relied on

---

[3] The Court also noted that Plaintiffs' Objections (Doc. No. 64) to Defendants' Motion for Summary Judgment were before the Court but never explicitly ruled on them.

the complaint.  The complaint consists of allegations, not facts.  Plaintiffs failed to cite to any materials in the record to show that there were no genuinely disputed material facts.   The Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value." Leigh v. Warner Bros., 212 F.3d 1210, 1217 (11th Cir. 2000); Worsham v. Provident Cos., Inc., 249 F. Supp. 2d 1325, 1330 (N.D. Ga. 2002) ("Mere conclusory allegations and assertions are insufficient to create a disputed issue of material fact.").  Thus, granting Plaintiffs' Motion for Partial Summary Judgment when it was based on conclusory allegations in the complaint was a clear error.

Second, the Court made an error in its ruling on the issue of the statute of limitations.  The FHA's statute of limitations requires that claims be filed "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A).  Plaintiffs filed their complaint on October 18, 2012.  Therefore, in a "traditional statute of limitations analysis," Defendants' allegedly discriminatory actions must have occurred no earlier than October 18, 2010. City of Miami, 800 F.3d at 1283.  Relying on a strict reading of the statutory text, Plaintiffs contended that the "termination" of Defendants' discriminatory practice had not yet occurred because Defendants' allegedly discriminatory practice terminates with the foreclosure on predatory loans issued by Defendants to minority borrowers.  Therefore, under Plaintiffs' theory, because the

foreclosure, or "termination," of Defendants' discriminatory practice had not yet occurred, the statute of limitations had not yet even begun to run.  Although not made explicitly clear in so many words in the March 3 Order, the Court adopted Plaintiffs' theory in ruling on the parties' cross motions for summary judgment.

Upon further reflection and with the aid of the Eleventh Circuit's guidance in City of Miami, the Court is compelled to revisit this ruling.  Plaintiffs allege that Defendants engaged in "predatory and discriminatory mortgage lending and servicing practices."  Compl. ¶ 292.  Plaintiffs have not alleged a single occurrence of discrimination, but instead, allege a discriminatory policy and practice.  "The continuing violation doctrine applies to 'the continued enforcement of a discriminatory policy.'"  City of Miami, 800 F.3d at 1284 (quotations omitted).  The Eleventh Circuit has held that "'the critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does.'"  Porter v. Ray, 461 F.3d 1315, 1323 (11th Cir. 2006) (quotations omitted).  Plaintiffs' claims are not based on isolated incidents, "but a continuing violation manifested in a number of incidents."  Havens Realty Corp. v. Coleman, 455 U.S. 363, 381 (1982).  "[A] 'continuing violation' of the Fair Housing Act should be treated differently from one discrete act of discrimination."  Id. at 380.  Therefore, because Plaintiffs allege a discriminatory

practice and not a single occurrence of discrimination, Plaintiffs' claims are subject to the continuing violation doctrine with respect to the statute of limitations.  See City of Miami, 800 F.3d at 1284; see also Havens Realty Corp., 455 U.S. at 381.

Plaintiffs' argument that the statute of limitations had not even begun to run because the "termination" of Defendants' discriminatory practice – the foreclosure of the discriminatory loans – is untenable.  First, this would subject a defendant to possible suit over the entire life of an allegedly discriminatory loan.  For example, under a 30-year loan, a plaintiff could bring a claim pursuant to the FHA at any time during that 30-year period whenever foreclosure occurred or the practice "terminated."  This appears to the Court to be inequitable and clearly not what Congress intended by establishing a two-year limitations period.

Second, Plaintiffs' position that they can bring suit as long as the discriminatory practice has not yet "terminated" under 42 U.S.C. § 3613(a)(1)(A), is not supported by the legislative history.  The continued violation doctrine was recognized by the U.S. Supreme Court in Havens Realty Corp. to apply to any claim under the FHA in which a practice of discrimination was alleged.  455 U.S. at 380-381.  Congress codified the continuing violation doctrine as recognized by the Havens Court by adding the specific termination language:

> A complaint must be filed within [two years] from the time the alleged discrimination occurred or terminated. The latter term is intended to reaffirm the concept of continuing violations, under which

> the statute of limitations is measured from the date of the last asserted occurrence of the unlawful practice.

H.R. Rep. No. 100-711, at 33 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2194; Garcia v. Brockway, 526 F.3d 456, 462 (9th Cir. 2008) ("Congress has since codified this continuing violation doctrine [articulated in Havens] by amending the FHA to include both 'the occurrence [and] the termination of an alleged discriminatory housing practice' as events triggering the two-year statute of limitations.") (quotation omitted); Miller v. Countrywide Bank, N.A., 571 F. Supp. 2d 251, 261 n.20 (D. Mass. 2008) (recognizing that the statutory language endorses the continuing violation doctrine and that the term "termination" was intended to reaffirm the continuing violations concept); Cmty. Interactions - Bucks Cnty., Inc. v. Twp. of Bensalem, No. CIV. A. 93-3959, 1994 WL 276476, at *5 (E.D. Pa. June 22, 1994) (noting that although the "termination" language seemingly broadens the scope of the FHA's limitations period, "Congress was merely sanctioning a doctrine that the courts had been utilizing for several years"). Thus, this makes clear that under the FHA's statutory text there is no distinction between the continuing violation doctrine and conduct that is ongoing.

Accordingly, the continuing violation doctrine is applicable to this case because Plaintiffs have alleged that Defendants engaged in a policy and practice of discrimination in violation of the FHA. Therefore, the Court denies Plaintiffs' Motion for Partial Summary Judgment.

10

Because the Court has granted Defendants' Motion for Reconsideration and now denied Plaintiffs' Motion for Partial Summary Judgment, it must also revisit Defendants' Motion for Summary Judgment because in its March 3 Order the Court did not discuss Defendants' arguments with respect to the continuing violation doctrine, instead finding that this doctrine did not apply.  Having now found that this doctrine is applicable to this case, the Court turns to the parties' arguments on the issue of the statute of limitations and the continuing violation doctrine.

The Court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is material if resolving the factual issue might change the suit's outcome under the governing law.  Id.  The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party.  Id. at 249.

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The moving party need not positively disprove the

opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party meets this initial burden, in order to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial.  Id. at 324-26. The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

As explained more fully below, pursuant to the continuing violation doctrine, in order for Plaintiffs' claims not to be barred by the statute of limitations, two requirements must be met: (1) one act of discrimination must have occurred during the statutory period, City of Miami, 800 F.3d at 1284; and (2) Plaintiffs must have acted diligently in asserting their rights under the FHA.  Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1222-1223 (11th Cir. 2001).

The Court will first assess whether Plaintiffs were aware of Defendants' allegedly discriminatory conduct and acted diligently.  The Eleventh Circuit has "limited the application of the continuing violation doctrine to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred." Ctr. For Biological Diversity v. Hamilton, 453 F.3d 1331, 1335 (2006).  "'If an event or series of events should have alerted a reasonable person to

act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine[.]'" Hipp, 252 F.3d at 1222 (quotations omitted).  Thus, the question before the Court is whether Plaintiffs were aware of Defendants' allegedly discriminatory lending practices before the two-year statutory period beginning on October 18, 2010.

After a review of the parties' statements of material facts and responses thereto, and viewing the facts in the light most favorable to Plaintiffs, the Court finds that there are genuine issues of material facts regarding when Plaintiffs knew about Defendants' alleged discriminatory practices.  Defendants assert that Plaintiffs were aware of the mortgage crisis and resulting foreclosures, were monitoring the crisis, engaged outside counsel to evaluate potential theories of liability, had access to and/or received studies showing that foreclosures were on the rise, and understood that the high rate of foreclosures may be connected to subprime lending. See generally, Defs.' Statement of Material Facts (Doc. No. 63-2).  In particular, Defendants contend that the Board of Commissioners for Fulton County received a report indicating that segregated communities may be subject to "reverse redlining" and that there was a correlation between a greater proportion of the minority population within a particular census tract and a greater proportion of subprime mortgages. Id. at ¶ 71. Defendants assert specifically that DeKalb County received a report indicating that mortgage and personal financing credit problems adversely

affected African American and Hispanic borrowers in Georgia and that 48% of African American and Hispanic borrowers took subprime loans compared to just 19% of Caucasian borrowers.  Id. at ¶ 13.

However, Defendants speak in generalities.  Defendants have not shown that Plaintiffs were aware, or should have been aware, prior to the statutory period that Defendants, *in particular*, engaged in predatory and discriminatory conduct, specifically with regard to lending to minority borrowers, that violated the FHA and was the reason for the foreclosures in Plaintiffs' communities.  In addition, although Defendants show generally that Plaintiffs were aware of the subprime mortgage lending crisis, Defendants have not shown that Plaintiffs were reasonably aware that Defendants' alleged discrimination to minorities in lending was a cause of the damages they now claim.  Based on the evidence presented, the Court cannot say as a matter of law that the series of events as presented by Defendants should have alerted Plaintiffs to assert their rights at the time of the violation, see Hipp, 252 F.3d at 1222, such that no rational trier of fact could find in favor of Plaintiffs on this issue.  See Telesca v. Vill. of Kings Creek Condo. Ass'n, Inc., 390 F. App'x 877, 882 (11th Cir. 2010) (finding plaintiffs were aware of the only injury complained of from 2005 but did not file their claim until 2012); Wood v. Briarwinds Condo. Ass'n Bd. of Dirs., 369 F. App'x 1, 5 (11th Cir. 2010) (finding the plaintiff had been

aware of the conduct of which he complained under the FHA for more than two years).

Turning next to whether any act of discrimination occurred within the statutory period, pursuant to the continuing violation doctrine, a plaintiff may "sue on otherwise time-barred claims as long as one act of discrimination has occurred . . . during the statutory period." City of Miami, 800 F.3d at 1284. "'[W]here a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the limitations period, starting at] the last asserted occurrence of that practice.'" Id. (quoting Havens Realty Corp., 455 U.S. at 380-381).

At this time, the Court is unable to reach the conclusion that no genuine issues of material facts exist with respect to whether a violation of the FHA occurred during the statutory period.  First, Defendants have contended throughout their briefing that whether a violation occurred during the statutory period is irrelevant because Plaintiffs were aware of their rights and did not file suit within the statutory limitations period.  Thus, Defendants hung their hat on only one part of the analysis. As explained above, the Court has found that genuine issues of material facts exist with regard to when Plaintiffs knew about Defendants' allegedly discriminatory practices, and therefore, because the Court has not entered summary judgment for

Defendants on that issue, whether a violation occurred within the statutory period is still relevant.

Second, based on the facts presented thus far by Plaintiffs, the Court cannot conclude that there are no genuine issues of material facts with respect to whether Defendants committed at least one violation of the FHA during the statutory period. Plaintiffs contend that they are unable to determine the specific discriminatory practices without Defendants answering the discovery Plaintiffs requested, and therefore, they do not have the discovery from Defendants necessary to show when the discriminatory practices occurred. Defendants continue to maintain the position that this discovery is irrelevant because Plaintiffs were aware of their rights but did not pursue them diligently.

In addition, Plaintiffs assert that three of the Defendants who have responded to discovery requests admit that hundreds of loans, which were made to minority borrowers between 2003-2008, were still being serviced by an HSBC entity within the statutory period. Pls.' Counter Statement of Material Facts in Opp'n to Defs.' Mot. for Summ. J. (Doc. No. 66-2), ¶ 16. This may be sufficient to show that a violation occurred within the statutory period, however, the parties have provided no further facts or made any arguments explaining the character of Defendants' activities. For example, it is unclear whether Plaintiffs are alleging that Defendants discriminated in the origination of the loan, as well as discriminated throughout the

life of the loan, including servicing, or whether Defendants only discriminated in the origination of the loan, which effects were felt for the life of the loan. Plaintiffs also assert Defendants initiated foreclosures in minority areas, but again, foreclosures in and of themselves without more facts, do not evince discrimination. Id. at ¶¶ 22-29. For example, it is unclear if there was actual discrimination in the foreclosure itself, or whether the foreclosure was the result of Defendants' discrimination in issuing the loan.[4]

Without further facts and arguments from the parties about Defendants' activities, the Court will not enter summary judgment for Defendants on this issue at this time. Based on the evidence presented thus far, the Court cannot conclude as a matter of law that Plaintiffs are unable to show that any discriminatory violations occurred within the statutory violations period.[5]

In summary, at this time, the Court finds that Plaintiffs' theory of a policy or pattern of discrimination falls under the continuing violation doctrine. Defendants

---

[4] Additionally, Plaintiffs present evidence from a former HSBC employee that HSBC employees and affiliates typically added yield spread premiums into the loan, especially during refinancing. Decl. of Robert Casjens (Doc. No. 66-5) ¶ 11, Ex. 2 to Pls.' Counter Statement of Material Facts in Opp'n to Defs.' Mot. for Summ. J. (Doc. No. 66-2). This employee also states that HSBC brokers repeatedly financed the same borrower's loans every six months to a year, with many of the loan refinancing deals containing the same or worse predatory terms and pricing. Id. at ¶ 15. However, the employee worked for HSBC from 2004 until 2007, meaning, none of these activities attested to by the employee would fall within the statutory period. Id. at ¶ 2.

[5] Should Plaintiffs continue to desire the discovery they contend was not provided by Defendants in their Motion and Objection to Defendants' Motion for Summary Judgment (Doc. No. 64), or should either party require additional discovery not yet received, the parties should proceed with the instructions for discovery provided in the Court's Standing Order, Instructions for Cases Assigned to the undersigned.

have not shown as a matter of law that Plaintiffs failed to diligently pursue their rights.  The Court is unable to conclude that no rational trier of fact could find for Plaintiffs on the issue of whether Defendants committed a violation of the FHA during the statutory period, and further facts are necessary to resolve this issue. Therefore, the Court denies Defendants' Motion for Summary Judgment for these reasons.[6]

## III. Defendants' Motion for Summary Judgment Regarding Improper Parties & Plaintiffs' Motion to Compel and For Sanctions

Because the Court had not entered a stay or abrogated the Scheduling Order imposed in this case by Judge Jones on January 27, 2014, the parties proceeded with the next phase of discovery concerning the proper defendants in the case.  Pursuant to the Scheduling Order, Defendants filed a Motion for Summary Judgment Regarding Improper Parties.  In addition to filing a response in opposition, Plaintiffs also filed a Motion to Compel and for Sanctions based on Defendants' alleged refusal to provide discovery, which Plaintiffs contended was necessary to respond to Defendants' Motion for Summary Judgment.

---

[6] Plaintiffs have also alleged in the complaint that Defendants' acts, policies, and practices adversely, disproportionately, and disparately impacted FHA protected minority borrowers. Defendants did not address the issue of disparate impact in their Motion for Reconsideration, and the parties did not address this issue in their cross motions for summary judgment.  Defendants raised the issue of disparate impact in their notice of supplemental authority, as did Plaintiffs in their notice of supplemental authority.  The Court makes no ruling on this issue at this time. Should the parties wish to address this issue, they may do so in a motion, not in a notice of supplemental authority.

Defendants have identified themselves as either "Holding Company Defendants"[7] or "Operating Defendants."[8]   Defendants' Motion for Summary Judgment Based on Improper Parties is brought by the Holding Company Defendants only.  These Holding Company Defendants contend that they are merely holding companies, whose principal business activities are to own subsidiaries. Each of them asserts that they could not have engaged in discrimination because they did not originate or service any loan alleged to be predatory or discriminatory, and therefore, could not have injured Plaintiffs.   More specifically, they contend that they did not:

> (i) originate or service any residential mortgage loans, (ii) make any representations to borrowers or potential borrowers, (iii) authorize any subsidiary to act as its agent for purposes of originating or servicing mortgage loans, or (iv) exercise control over the day-to-day business activities of its subsidiaries, who were managed by their own directors and managers.

See generally Holding Company Defs.' Statement of Material Facts (Doc. No. 95-2).  The Holding Company Defendants argue that all of the provisions of the FHA on which Plaintiffs rely impose liability only on those who actually discriminate in connection with the provision of housing.  They contend that they are not subject to

---

[7]  The Holding Company Defendants identify themselves as follows: HSBC North America Holdings Inc., HSBC Investments (North America) Inc., HSBC Finance Corporation, HSBC Mortgage Services Warehouse Lending Inc., HSBC USA Inc., HSBC Markets (USA) Inc., and HSBC Securities.

[8]  The Operating Defendants identify themselves as follows: HSBC Mortgage Corporation (USA), HSBC Mortgage Services Inc., HSBC Bank USA, N.A., and Decision One Mortgage Company, LLC.

any liability under the FHA because they had nothing to do with the sale or rental of a dwelling or residential real estate-related transactions alleged to be at issue in the complaint.

Plaintiffs respond that Defendants have not provided discovery, which Plaintiffs need to answer Defendants' Motion for Summary Judgment.  Furthermore, Plaintiffs assert that although the Holding Company Defendants would have this Court interpret the FHA narrowly, the FHA actually "imposes liability on a wide range of activities relating to residential real-estate financing transactions and upon all of those individuals or entities that contribute to a violation of the FHA, i.e., all of those participants 'in the process as a whole.'"  Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J., at 2 (Doc. No. 97).  Plaintiffs maintain that their complaint alleges that each of the named Defendants engaged in a broad, continuing, nationwide scheme of "equity-stripping" based on common policies and practices, implemented and enforced from the top-down.  This was made possible due to all of Defendants' "necessarily interrelated mortgage lending, funding, securitization, servicing, and foreclosure activities and operations."  Id. at 2-3.  According to Plaintiffs, these activities include "marketing, mortgage loan originations, underwriting, loan funding and purchases through 'warehouse' lending, loan securitizations and sales, loan servicing, and/or foreclosures."  Id. at 13-14. Plaintiffs argue that their claim under the FHA is not limited to merely loan

originations and servicing, and instead, that the FHA has been interpreted as prohibiting a wide variety of conduct having nothing to do with lending and servicing.

In order for the Court to determine who is a proper party, the Court must first be informed of what discrimination occurred.  As noted above, the parties have not provided information about the characteristics of Defendants' activities. Thus, it's unclear if the alleged discrimination occurred in loan origination, sales, funding, marketing, servicing, etc.  And until it is clear what discrimination occurred, the Court cannot dismiss the Holding Company Defendants. For example, these Defendants state that they did not control day-to-day operations of the subsidiaries or originate or service any residential mortgage loans. But questions remain, for example, as to whether they funded any loans, set any policies or procedures with regard to loan services that were to be followed by the subsidiaries, or had any other involvement with the policies and procedures of the subsidiaries with respect to minority borrowers.  Until the actual discrimination is known, the Court agrees with Plaintiffs that a proper party includes any Defendant who has contributed in any way to the scheme, such as via "establishing, disseminating, monitoring, enacting and/or enforcing [Defendants'] corporate policies and practices that permitted or encouraged the discriminatory conduct," as alleged by Plaintiffs in the complaint. Id. at 14.  The Court finds that it may not dismiss a party until it is clear what party

is responsible for which actions.  Thus, the Court cannot conclude at this time that no rational trier of fact could find for Plaintiffs such that the Holding Company Defendants should be dismissed from this action.[9]

As for Plaintiffs' Motion to Compel and for Sanctions, the Court will deny this motion at this time. It is unclear whether, in light of the Court's rulings in this Order, Plaintiffs are still seeking this discovery.[10]  Should Plaintiffs still seek this discovery, the Court instructs Plaintiffs to follow the procedures for discovery provided in the Court's Standing Order, Instructions for Cases Assigned to the undersigned.[11]

## IV. Summary

As noted in the Court's October 21, 2015 Order, having resolved the pending motions, the Court is now prepared to set a status conference to discuss further management of the case and entry of a new scheduling order.  Accordingly, a teleconference hearing will be held before the undersigned at **10:00 a.m. on**

---

[9]  Defendants contend that Defendant "HSBC Corps 1-50" does not exist.  Plaintiffs respond that they have insufficient information to admit or deny this fact because they were not provided discovery by Defendants.  The Court will not dismiss this Defendant at this time until further information is provided to ascertain whether this Defendant exists.

[10] Plaintiffs filed their motion in July of this year.

[11] The Court will note, however, that Defendants' blanket responses to Plaintiffs' discovery requests were as follows:  "[Defendant] objects to the Requests on the grounds that it is not a proper party to this action because it did not engage—and is not alleged to have engaged—in conduct governed by the Fair Housing Act, 42 U.S.C. § 3601, et seq., which is the single claim advanced in the Complaint."   See generally, Holding Company Defs.' Resp. to Pls.' First Request for the Produc. Doc. (Doc. No. 96-10).  Defendants refused to respond to discovery based on this contention.  However, this is not a proper ground on which to refuse discovery, as it is a legal conclusion whether Defendants are proper parties.

**Wednesday, December 9, 2015**.  Counsel should designate a lead attorney to call all other counsel, and once all participating parties are on the call, the lead attorney should call the Court at (404) 215-1520.  This conference call will be recorded by a duly-appointed court reporter.  In an effort to aid in the discussion of the call, the Court directs the parties to jointly file a proposed scheduling order no later than seven (7) days prior to the telephone conference.  If the parties absolutely cannot agree upon a schedule, after working diligently to do so, they should state as much, and file proposed scheduling orders separately.  At this time, the Court does not intend to address any other matters during this conference, except for a schedule for discovery.[12]

Finally, the Court notes that it is cognizant of the delay that has occurred in this case.  For example, the parties began briefing arguments about many of the issues in this Order as early as January of 2013.  The Court encourages the parties to move forward in order to effectively manage this case to a just resolution.  To that end, the Court will continuously monitor this case to consider whether appointing a special master or ordering mediation would be efficient and effective.[13]

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Reconsideration, or, in the alternative, for Certification of Controlling Questions of

---

[12] Because it is unclear which discovery remains outstanding, the Court will not entertain any motions to compel during this conference.  Should a conference on a motion to compel be necessary, the Court will handle that issue at a later time.

[13] If the parties would prefer that either this case be handled by a special master or that the Court order mediation at this time, the parties should notify the Court immediately.

Law (Doc. No. 81); **DENIES** Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 50); **DENIES** Defendants' Motion for Summary Judgment (Doc. No. 63); **DENIES** Plaintiffs' Motion and Objection to Defendants' Motion for Summary Judgment (Doc. No. 64); **DENIES AS MOOT** Defendants' Motion to Stay (Doc. No. 82); **GRANTS** Plaintiffs' Motion for Leave to File Supplemental Authority (Doc. No. 93); **DENIES** Defendants' Motion for Summary Judgment Regarding Improper Parties (Doc. No. 95); and **DENIES** Plaintiffs' Motion to Compel and for Sanctions (Doc. No. 96).  The Court **DIRECTS** counsel to participate in a status conference as specified herein; and **DIRECTS** the parties, seven (7) days prior to the telephone conference, to either (1) jointly file a proposed scheduling order; or (2) if they absolutely cannot agree, file separate proposed scheduling orders.

**SO ORDERED**, this 17th day of November, 2015.

_Eleanor L. Ross_
ELEANOR L. ROSS
UNITED STATES DISTRICT JUDGE