# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| DEKALB COUNTY, FULTON COUNTY, and COBB COUNTY, GEORGIA,<br><br>Plaintiffs,<br><br>v.<br><br>HSBC NORTH AMERICA HOLDINGS INC., ET AL.,<br><br>Defendants. | CIVIL CASE NO.:<br>1:12-cv-03640-ELR |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' PROPOSED SCHEDULING ORDER

Defendants (or "HSBC") respectfully submit this proposed scheduling order, pursuant to the Court's instructions in its Omnibus Order of November 17, 2015 ("Omnibus Order," ECF No. 110).  The parties have agreed that, given their very different views of how this case should proceed, each side should present its own proposed scheduling order for consideration by the Court.[1]  Defendants' proposed

---

[1] The parties met and conferred on November 23, 2015 in an attempt to agree on the parameters of a joint proposed scheduling order.  The parties were unable to agree on key elements of a scheduling order and, accordingly, agreed to submit

1

discovery plan, as set forth herein, calls for phased discovery to enable the parties first to obtain all discovery necessary to fully brief a summary judgment motion addressing the threshold issues identified by the Court in this case:  whether Plaintiffs are able to identify discriminatory conduct within the statute of limitations period and, if so, whether Plaintiffs have acted diligently to pursue their rights under the Fair Housing Act ("FHA").  Assuming that the Court enters the scheduling order on December 11, 2015, Defendants' schedule calls for such discovery to be completed by March 11, 2016, and for summary judgment to be fully briefed by April 29, 2016—putting the Court in a position to determine expeditiously whether the case should proceed further and, if so, what the appropriate contours of the case should be.  By contrast, full merits discovery on all issues in this case likely would stretch well into 2017.  Defendants respectfully submit that this phased approach to discovery best satisfies the requirements for the just and efficient administration of justice set forth in the Federal Rules and the Court's Omnibus Order.  (*See* Omnibus Order 23.)[2]

---

separate proposed orders consistent with the Court's Order.  (*See* Omnibus Order 23-24.)

[2] In its Omnibus Order, the Court also suggested that the parties consider a special master or agree to mediation.  (*See id.* 23.)  Defendants anticipate a significant number of discovery disputes based on the problems counsel have had in agreeing on virtually any issue to date, and therefore believe that the Court should appoint a special discovery master to avoid the alternative likelihood of multiple discovery

## SUMMARY OF DEFENDANTS' PROPOSAL[3]

In accordance with the Court's Omnibus Order, Defendants propose phasing discovery to establish, first, whether Plaintiffs' FHA claim is time-barred because they cannot show a violation of the statute within the two-year statute of limitations.  Application of the continuing violation doctrine in connection with any alleged unlawful activity occurring prior to October 18, 2010 requires that "(1) one act of discrimination must have occurred during the statutory period; and (2) Plaintiffs must have acted diligently in asserting their rights under the FHA." (Omnibus Order 12 (citations omitted).)  Plaintiffs' proposal would require the parties to engage in wide-ranging additional discovery on a myriad of issues relating to a span of time covering more than a dozen years and costing millions of dollars, prior to determining whether Plaintiffs' claims are timely.  Plaintiffs' approach is wholly inconsistent with the efficient administration of justice and will significantly delay a merits determination on the threshold issue of whether Plaintiffs can show a violation occurring within the statute of limitations period.

---

motions to the Court as discovery proceeds in this case.  Defendants respectfully submit that mediation is premature at this stage of the case.

[3] The attached Appendix provides a more detailed recitation of Defendants' proposed discovery approach, identifying the purpose of each phase as well as the types of information to be exchanged during each phase.  The information to be exchanged, along with proposed applicable deadlines, also is included in Defendants' attached Proposed Scheduling Order.

Specifically, Defendants propose that the first phase of discovery focus on loan origination and servicing activity that occurred *on or after* October 18, 2010 (*i.e.*, within two years of the date Plaintiffs filed this action, *see* 42 U.S.C. § 3613(a)(1)(A)), as well as Plaintiffs' diligence in asserting their rights.  Defendants will produce loan origination data sufficient to allow Plaintiffs to identify properties where they allegedly suffered the injuries alleged in the Complaint. Plaintiffs will then provide discovery relating to causation of their alleged damages at the identified properties.  This discovery is intended to enable Plaintiffs to identify with the required specificity any actionable alleged discriminatory policy or practice and thereby address the Court's stated concern that "it is unclear whether Plaintiffs are alleging that Defendants discriminated in the origination of the loan, as well as discriminated throughout the life of the loan, including servicing, or whether Defendants only discriminated in the origination of the loan, which effects were felt for the life of the loan."  (Omnibus Order 16-17; *see also id.* at 17 (observing that alleged foreclosures in minority areas "in and of themselves without more facts, do not evince discrimination").)

This first phase is precisely aligned with the case management approach taken by two District Courts in the Central District of California in virtually identical cases filed by the City of Los Angeles.  *See City of L.A. v. Bank of Am.*

4

*Corp.*, No. 2:13-cv-9046, 2015 WL 4880511, at *5 (C.D. Cal. May 11, 2015)

(granting summary judgment for defendant bank where discovery failed to show

any "evidence of injury within the limitations period"); *City of L.A. v. Wells Fargo

& Co.*, No. 2:13-cv-9007, 2015 WL 4398858, at *1 (C.D. Cal. July 29, 2015)

(granting summary judgment after initial phase of discovery limited to the statute

of limitations period showed that defendant bank "did not violate the Fair Housing

Act during the limitations period.").  This threshold issue also has particular

salience in light of the Supreme Court's recent decision in *Texas Department of

Housing & Community Affairs v. Inclusive Communities Project*, 135 S. Ct. 2507

(2015), which subjected disparate impact claims under the FHA to a "robust

causality requirement" at the pleading stage between a prohibited policy or practice

alleged and a statistically significant disparity.  *Inclusive Cmtys.*, 135 S. Ct. at

2523-24.

 At the conclusion of Phase One, Defendants expect to move promptly for

summary judgment demonstrating that Plaintiffs cannot identify (i) a particular

HSBC policy or practice, within the limitations period, that was discriminatory in

violation of the FHA; or (ii) any particular Phase One properties securing a loan

originated by Defendants and affected by such discriminatory practice, where

Plaintiffs' injuries are fairly traceable to Defendants' conduct.  Defendants' motion

also will demonstrate that Plaintiffs failed to act diligently in asserting their rights. Defendants' proposed schedule contemplates that all such discovery will be completed by March 11, 2016, and that a summary judgment motion on these issues will be fully briefed by April 29, 2016.

Insofar as the Complaint could survive a Phase One motion for summary judgment, a second phase of discovery will focus on loans originated or serviced *prior to* October 18, 2010 and pursuant to the same purportedly discriminatory practice identified in Phase One. *See City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1285 (11th Cir. 2015) (to reach conduct before the limitations period, the same "essential discriminatory practice" must continue into the limitations period). In Phase Two, subject to the contours of the Court's Phase One summary judgment order, the parties will exchange information similar to that shared in Phase One (*e.g.*, loan origination data; applicable policies and procedures; and discovery regarding causation of Plaintiffs' alleged damages at the properties), with respect to any relevant properties and loans made prior to the statute of limitations period.

Defendants' schedule anticipates that at the conclusion of Phase Two discovery, Plaintiffs will amend their Complaint to identify the full list of properties—from Phase One and Phase Two—where they have a basis to allege

injuries fairly traceable to an FHA violation by Defendants that continued into the

limitations period.  A final Phase Three of discovery will be devoted to examining

the nature and extent of Plaintiffs' purported damages at the properties listed in the

Amended Complaint, and to ascertain any relevant involvement by the Holding

Company Defendants[4] in the "scheme" alleged by Plaintiffs.

## STANDARD

District Courts have "broad discretion over the management of pre-trial

activities, including discovery and scheduling." *Johnson v. Bd. of Regents of Univ.*

*of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001).  A District Court also "has the

inherent power to control its docket and manage cases before it." *Johnson v.*

*Smith*, No. 1:11-cv-2012-WSD, 2014 WL 4829270, at *2 (N.D. Ga. Sept. 29,

2014) (citing *Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262,

1264 (11th Cir. 2000)).

The Court has authority to manage the "timing and sequence of

discovery," including whether to conduct discovery in phases.  *DeRubeis v. Witten*

*Techs., Inc.*, 244 F.R.D. 676, 678 (N.D. Ga. 2007); *Kimberly-Clark Corp. v. James*

*River Corp. of Va.*, 131 F.R.D. 607, 608 (N.D. Ga. 1989); *see also Adams v.*

---

[4] The Holding Company Defendants are HSBC North America Holdings Inc.,
HSBC Investments (North America) Inc., HSBC Finance Corporation, HSBC
Mortgage Services Warehouse Lending Inc., HSBC USA Inc., HSBC Markets
(USA) Inc., HSBC Securities, and HSBC Corps 1-50.

*Thiokol Corp.*, 231 F.3d 837, 841 (11th Cir. 2000) (noting bifurcated approach to discovery where expectation is that cross motions for summary judgment may wholly or partially resolve case).  Phased discovery is properly utilized "[f]or convenience, to avoid prejudice, [and] to expedite and economize" the discovery process.  *See* Fed. R. Civ. P. 42(b); *see also Clincy v. Galardi S. Enters., Inc.*, 808 F. Supp. 2d 1326, 1328 (N.D. Ga. 2011) (bifurcated discovery ordered to decide threshold issue of whether FLSA plaintiffs were employees or independent contractors); *Davis v. City of Loganville*, No. 3:04-cv-68, 2006 WL 1312411, at *4 (N.D. Ga. May 11, 2006) (ordering bifurcation in light of judicial economy and risk of prejudice); Order, *Rindfleisch v. Gentiva Health Servs., Inc.*, No. 1:10-cv-3288-SCJ (N.D. Ga. May 26, 2011), ECF No. 194 (ordering bifurcated discovery and citing cases).

Generally, scheduling orders are governed by Rule 16(b).  The purpose of Rule 16 is to ensure that the Court "will take some early control over the litigation."  Fed. R. Civ. P. 16 advisory comm. note on 1983 amendment.  The scope of discovery is limited by Rule 26(b) and should emphasize any information relevant to a party's claim or defense that is "proportional to the needs of the case, considering the importance of the issues at stake" and "the importance of the discovery in resolving the issues," among other factors.  Fed. R. Civ. P. 26(b)(1).

8

## DISCUSSION

Defendants' proposed scheduling order incorporates each of the Court's holdings in the Omnibus Order in a sequenced approach to discovery that focuses on the factual discovery needed for initial dispositive motions first, thereby advancing the efficient administration of justice by conserving the parties' and the Court's resources as much as practical.

A. **Phased Discovery Is Consistent with the Court's Omnibus Order and Furthers Judicial Economy.**

The Court's Omnibus Order established three major guideposts governing the effective management of this case going forward.  First, the Court held that Plaintiffs' claim is timely only if Plaintiffs can identify at least one act of discrimination occurring within the statutory period.  (*See* Omnibus Order 12 (citing *City of Miami*, 800 F.3d at 1284).)

Second, the Court held that Plaintiffs' claim will be time-barred if they did not act diligently to assert their rights.  (*Id.* (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1222-23 (11th Cir. 2001)); *see also id.* at 14 (noting that the claim would be barred if Defendants could show that "Plaintiffs were aware, or should have been aware, prior to the statutory period that Defendants, *in particular*, engaged in predatory and discriminatory conduct . . . .").)

9

Finally, the Court noted that the Complaint does not make clear and discovery has yet to reveal "what discrimination occurred."  (*Id.* at 21.) Accordingly, the Court concluded that it is too early at this point in the case to dismiss the Holding Company Defendants because they may have had a role in activities such as marketing, funding, or securitization as part of an alleged "scheme," even though they had no involvement with mortgage origination or servicing activities.  (*Id.*)

Together, the Court's holdings—coupled with the Court's instruction to the parties "to effectively manage this case to a just resolution" (*id.* at 23)—favor the phased approach proposed as the most efficient way to resolve the case. Discovery relating to whether Plaintiffs can identify a predicate violation within the limitations period could entirely dispose of the case.  Similarly, if discovery reveals that Plaintiffs knew, or should have known, that HSBC in particular may have caused their alleged injuries, the claim would be time-barred.  Judicial economy will be served by addressing these discrete and potentially dispositive issues in an initial phase of discovery.  *See Order at 6, Rindfleisch*, No. 1:10-cv-3288-SCJ; *Tillotson Corp. v. Shijiazhaung Hongray Plastic Prods., Ltd.*, No. 4:05-cv-0118-RLV, 2006 WL 3050810, at *2 (N.D. Ga. Oct. 23, 2006) (bifurcating claims to avoid prejudice and confusion and to "promote[] efficiency"); *Cook v.*

*United Service Auto. Ass'n*, 169 F.R.D. 359, 362 (D. Nev. 1996) (noting that judicial economy warrants bifurcation of potentially dispositive issues).

**B.      Defendants' Proposed Scheduling Order Focuses First on Identifying Discriminatory Acts within the Limitations Period, and Plaintiffs' Knowledge of the Basis of Their Claim.**

Defendants' proposed scheduling order contemplates an initial phase of discovery focused on Defendants' loan practices within the statute of limitations period, as well as discovery relating to whether Plaintiffs were aware of the basis for their claim against HSBC in particular prior to October 18, 2010.  The purpose of this phase is to track the Court's conclusions with respect to the statute of limitations.  The Court held that

> in order for Plaintiffs' claims not to be barred by the statute of limitations, two requirements must be met:  (1) one act of discrimination must have occurred during the statutory period, *City of Miami*, 800 F.3d at 1284; and (2) Plaintiffs must have acted diligently in asserting their rights under the FHA.  *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1222-23 (11th Cir. 2001).

(Omnibus Order 12.)  This approach is consistent with the discovery phasing in two other cases, both virtually identical to this case, which were filed by the City of Los Angeles.  *See City of L.A. v. Bank of Am. Corp.*, 2015 WL 4880511, at *5 (granting summary judgment for defendant bank where discovery failed to show any "evidence of injury within the limitations period"); *City of L.A. v. Wells Fargo & Co.*, 2015 WL 4398858, at *1  (granting summary judgment after initial phase of

11

discovery limited to the statute of limitations period showed that defendant bank "did not violate the Fair Housing Act during the limitations period.").

In Phase One, Defendants will provide Plaintiffs with discovery sufficient to show whether any discriminatory mortgage origination or servicing practice occurred within the statute of limitations period.  Defendants will produce loan data relating to all loans originated by Defendants within the Plaintiff Counties from October 18, 2010 to December 31, 2014.  Defendants also will produce all policies and procedures relating to mortgage origination and servicing during that timeframe.  Production of more than four years of loan origination data and all applicable policies and procedures from the same timeframe provides more than ample data and information from which Plaintiffs may carry their burden to identify any violation of the FHA within the limitations period.

In this same Phase One, Defendants also propose that Plaintiffs will provide discovery relating to any claimed injuries at the properties identified in the data Defendants provide to them and properties within a one-block radius of such properties.[5]  For example, with respect to the Phase One properties, Plaintiffs will

_____

[5] The Court already has ordered Plaintiffs to identify specific properties at which they allegedly suffered harm.  (*See* Order Den. Defs.' Mot. Dismiss 21, ECF No. 23 (ordering Plaintiffs to "amend their Complaint to add the properties that they allege were affected by discriminatory loans and from which they suffered injury").)

provide information relating to property vacancy; property condition; housing code violations; municipal services rendered (*e.g.*, fire, police, and property maintenance); tax liens and other municipal liens; downpayment and/or mortgage assistance programs; social services rendered to owners or occupants; foreclosures; and public records relating to owners or occupants.[6]  This will put Defendants in a position to understand what injuries Plaintiffs allege with respect to the properties securing loans Defendants originated, and to assess causation in light of any injury spillover from surrounding properties where Defendants neither originated nor serviced loans.

Additionally, Plaintiffs will provide information regarding the timing of their knowledge of HSBC's involvement in any activity giving rise to Plaintiffs' claim.  As the Court held in its Omnibus Order, "Plaintiffs must have acted diligently in asserting their rights under the FHA."  (Omnibus Order 12 (citing *Hipp*, 252 F.3d 1208, 1222-23).)  Consistent with the Court's order, Defendants anticipate taking additional discovery in the first phase on whether Plaintiffs were aware of the basis for their claim.  Because the Court concluded that there was insufficient evidence to establish whether Plaintiffs were aware that Defendants "in

---

[6] Defendants already served discovery requests on these topics on March 25, 2015 (*see* Certificate of Serv. of Disc. Reqs., ECF No. 79), but Plaintiffs have not yet produced any responsive information and the Parties agreed to refrain from producing any additional discovery until the Court issues a scheduling order.

particular" may have caused their alleged injuries (*id.* at 14), it will be essential to correct the deficiencies in the discovery previously provided by Plaintiffs in this regard. Specifically, Plaintiffs refused to provide discovery from more than two-thirds of custodians they identified as likely to have information relating to the timing of their knowledge of their claim. (*See* Defs.' Mem. Supp. Mot. Summ. J. 4 & n.2, ECF No. 63-1 (noting prejudice to Defendants in Plaintiffs' refusal to provide discovery from over two-thirds of the custodians they identified as likely to have information relating to the timing of Plaintiffs' knowledge of their claim); *see also* Ex. A (Letter from V. Hletko, Partner, BuckleySandler LLP, to J. Evangelista, Partner, Harris Penn Lowry (June 16, 2014)); Ex. B (Letter from V. Hletko, Partner, BuckleySandler LLP, to J. Evangelista, Partner, Harris Penn Lowry (July 2, 2014)).)[7]

## C.     If Needed, a Second Phase of Discovery Will Examine Properties and Loans Made Prior to the Limitations Period.

If Plaintiffs were to survive Defendants' Phase One summary judgment motion, a second phase would provide discovery on activity occurring prior to the

---

[7] Defendants may also seek *in camera* review of certain documents Plaintiffs withheld from production, on the basis of privilege, in the first phase of discovery under the prior scheduling order. Plaintiffs produced privilege logs evidencing communications between Plaintiffs and outside counsel, prior to October 18, 2010, regarding the "potential viability of Fair Housing Act ("FHA") to generally address the foreclosure crisis." (*See* DeKalb Cty. Log of Privileged Docs. 2, ECF No. 63-5.)

limitations period.  Because the allegations in Plaintiffs' complaint begin in 2003 (*see, e.g.*, Compl. ¶¶ 53-60), phasing discovery provides an efficient mechanism to conserve the Court's and the parties' resources.  Defendants' plan contemplates reserving for Phase Two, if necessary, discovery on relevant loans and properties relating to activity that pre-dates the limitations period, because carrying such a discovery burden now will be pointless if Plaintiffs' claim is found to be time-barred after a more limited Phase One discovery period.

Accordingly, Defendants' proposed Phase Two discovery may include an exchange of similar discovery from Phase One, as applicable to any properties securing a loan originated by Defendants and made prior to the limitations period (*e.g.*, applicable loan data and policies from Defendants, and property-specific information from Plaintiffs sufficient for Defendants to test Plaintiffs' theory of causation of damages at any potentially relevant properties).  The precise scope of Phase Two discovery will be determined in part by the Court's order on Defendants' anticipated Phase One summary judgment motion, and the parties' discovery requests.

At the conclusion of Phase Two discovery, Plaintiffs will amend their Complaint to identify the full list of properties, from Phase One and Phase Two, where they have a basis to allege injuries fairly traceable to an FHA violation by

Defendants that continued into the limitations period.  (*See* Order Den. Defs.' Mot. Dismiss 21 (ordering Plaintiffs to "amend their Complaint to add the properties that they allege were affected by discriminatory loans and from which they suffered injury").)

**D.     Discovery Relating to the Holding Company Defendants Is Not Necessary to Establish a Predicate Act of Discrimination within the Limitations Period.**

In denying the HSBC Holding Company Defendants' motion for summary judgment, the Court noted that it cannot conclude under the relevant standard that the Holding Company Defendants had no role in the "scheme" alleged by Plaintiffs.  (*See* Omnibus Order 21.)  At the appropriate time, Defendants will establish that they had no role in any such alleged "scheme."[8]  But the expedient purpose of phasing discovery is that the Court and the parties may assume (solely for the purpose of managing discovery) that the Holding Company Defendants did "direct and control" its subsidiaries through "coordinated practices," as alleged in the Complaint.  (*See* Compl. ¶ 43.)

Taking discovery from the Holding Company Defendants serves no purpose if Plaintiffs cannot identify a violation, within the limitations period,

---

[8] Sworn declarations already submitted in this case demonstrate that the Holding Company Defendants did not exercise control over the day-to-day activities of their subsidiaries.  (*See generally* Holding Co. Defs.' Mem. Supp. Mot. Summ. J. 13-17, ECF No. 95-1.)

relating to mortgage origination or servicing.  Because the Holding Company

Defendants did not themselves originate or service mortgages (*see* Holding Co.

Defs.' Mem. Supp. Mot. Summ. J. 10), discovery from those entities will do

nothing to aid Plaintiffs in satisfying their burden.

   Plaintiffs have argued that their Complaint alleges an "equity stripping

scheme" that was conducted "through top-down discriminatory policies and

practices [and] involves a variety of interrelated activities and entities within the

HSBC residential mortgage enterprise."  (Pls.' Mem. Opp'n to Holding Co. Defs.'

Mot. Summ. J. 13, ECF No. 97.)  Plaintiffs allege that the "scheme" involves

"marketing, mortgage loan originations, underwriting, loan funding and purchases

through 'warehouse' lending, loan securitizations and sales, loan servicing and/or

foreclosures."  (*Id.* at 13-14.)[9]  But as the Court made clear in its recent Omnibus

Order, discovery must establish first "what discrimination occurred."  (Omnibus

Order 21.)  While Plaintiffs insist on an ill-defined "scheme," the Complaint

plainly does not allege any discrimination in the process of marketing, funding,

purchasing, or securitizing loans.  In particular, the Complaint does not allege that

Defendants engaged in discriminatory marketing, that Defendants funded loans

---

[9] Many aspects of Plaintiffs' alleged "scheme" are redundant.  For example, loan
underwriting is part of loan origination, and foreclosures are part of loan servicing
activities.

based on prohibited borrower characteristics, that Defendants purchased loans

based on prohibited borrower characteristics, or that Defendants securitized loans

based on prohibited borrower characteristics.

Accordingly, the Court observed that the Holding Company Defendants

may potentially be liable only for funding loans or otherwise setting "policies and

procedures with regard to loan services that were *to be followed by* the

subsidiaries." (*Id.* (emphasis added).)  In other words, even if the Holding

Company Defendants exercised "control and direction" over their subsidiaries,

Plaintiffs' claim fails if that "control and direction" did not result in discriminatory

loans.  For this reason, Defendants' proposed discovery plan focuses on mortgage

origination and servicing practices.[10]

---

[10] As Defendants have noted previously, the Complaint alleges only "poor
servicing" and contains no meaningful allegations that servicing was conducted in
a discriminatory manner. (*See, e.g.*, Defs.' Mem. Supp. Mot. Recons. 13 & n.6,
ECF No. 81-1.)  Insofar as Plaintiffs' claim as to discriminatory servicing rests on
their allegation that Defendants "continue to receive periodic payments on
outstanding predatory and discriminatory loans at issue here" (Compl. ¶ 272) those
allegations fail in light of the Court's recent order.  (Omnibus Order 8 ("[T]he
present consequence of a one time violation . . . does not extend the limitations
period.") (quoting *Porter v. Ray*, 461 F.3d 1315, 1323 (11th Cir. 2006))); *see also
id.* at 16-17 ("[I]t is unclear whether Plaintiffs are alleging that Defendants
discriminated in the origination of the loan, as well as discriminated throughout the
life of the loan, including servicing, or whether Defendants only discriminated in
the origination of the loan, which effects were felt for the life of the loan.").)  In
any event, Defendants are prepared to provide discovery relating to mortgage
servicing policies, without waiving any right to object to Plaintiffs' failure to

Plaintiffs principally relied on *Adkins v. Morgan Stanley*, No. 12 CV 7667 HB, 2013 WL 3835198, at *4 (S.D.N.Y. July 25, 2013), to justify the viability of their claim alleging an illegal "scheme."  (*See, e.g.*, Pls.' Mem. Opp'n to Holding Co. Defs.' Mot. Summ. J. 13.)  However, that case supports Defendants' approach to discovery.  In *Adkins*, the District Court refused to dismiss a claim against Morgan Stanley for funding loans that were alleged to be discriminatory.  The case involved minority plaintiffs who received mortgage loans from New Century Mortgage Company that were funded by Morgan Stanley.  There were no allegations in *Adkins* that Morgan Stanley *funded* the loans in a discriminatory manner, only that Morgan Stanley funded loans that New Century Mortgage Corporation *originated* in a discriminatory manner.  Morgan Stanley allegedly "creat[ed] the conditions under which New Century originated toxic loans." *Adkins*, 2013 WL 3835198, at *1.  In other words, showing that mortgages were originated in a discriminatory manner is a necessary predicate to any potential liability for funding discriminatory loans.[11]

---

provide a "short and plain statement" of their allegations relating to mortgage servicing.  Fed. R. Civ. P. 8(a); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (striking "shotgun" complaint and ordering re-pleading by plaintiff where allegations made no distinction among numerous defendants and were "buried beneath innumerable pages of rambling irrelevancies").

[11] Insofar as Plaintiffs' claim relates to HSBC's funding of loans originated by non-HSBC entities (*see, e.g.*, Compl. ¶ 151), Plaintiffs are free to obtain discovery

Defendants' phased approach to discovery recognizes this reality, and thus focuses first on whether there were any discriminatory loans within limitations period; then on whether Plaintiffs were injured by any earlier loans pursuant to a continuing practice; and finally on the role of the Holding Company Defendants, as well as issues relating to damages calculations.  By assuming, for now, that the Holding Company Defendants exercised "control and direction" over their subsidiaries, the parties can avoid burdensome discovery on that issue and instead focus on the predicate issues surrounding loan origination and servicing activities. In a case about allegedly discriminatory mortgage lending, this phased approach is "proportional to the needs of the case, considering the importance of the issues at stake."  Fed R. Civ. P. 26(b).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court ORDER discovery to be conducted in phases, consistent with Defendants' proposed Scheduling Order.

---

from those other entities and disclose it consistent with their obligations under Fed. R. Civ. P. 26(a)(3)(A)(iii).  HSBC does not have custody or control of other entities' HMDA loan origination data—which Plaintiffs acknowledge is the "only readily available information . . . from which to statistically demonstrate" any discriminatory lending activity.  (Compl. ¶ 52.)

Dated:  December 2, 2015          Respectfully submitted,

                          /s/ Valerie L. Hletko
                          Andrew L. Sandler (*pro hac vice*)
Valerie L. Hletko (*pro hac vice*)
Ann D. Wiles (*pro hac vice*)
Mark E. Rooney (*pro hac vice*)
BUCKLEYSANDLER LLP
1250 24th St. NW, Suite 700
Washington, D.C.  20037
(202) 349-8000 (Telephone)
(202) 349-8080 (Facsimile)
asandler@buckleysandler.com
vhletko@buckleysandler.com
awiles@buckleysandler.com
mrooney@buckleysandler.com

Therese G. Franzen (Bar No. 492367)
D. Sharmin Arefin (Bar No. 511388)
FRANZEN AND SALZANO, P.C.
40 Technology Parkway South, Suite 202
Norcross, Georgia 30092-2906
(770) 248-2885 (Telephone)
(770) 248-2883 (Facsimile)
tfranzen@franzen-salzano.com
sarefin@franzen-salzano.com

*Attorneys for Defendants*

## **CERTIFICATION PURSUANT TO LOCAL RULE 7.1(D)**

I hereby certify that the foregoing brief was prepared using Times New

Roman 14 point font, in accordance with Local Rule 5.1(C).

/s/ Valerie L. Hletko

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I electronically filed the foregoing

Defendants' Proposed Scheduling Order using this Court's ECF System, which

will automatically send email notification to the following attorneys of record for

all parties:

| | |
|---|---|
| Darren W. Penn<br>darren@hpllegal.com | Hezekiah Sistrunk, Jr.<br>hez@sistrunklaw.com |
| David James Worley<br>david@hpllegal.com | Jane Lamberti Sams<br>jls@sistrunklaw.com |
| J. Antonio DelCampo<br>tony@hpllegal.com | Shean DeCarlos Williams<br>sdw@sistrunklaw.com |
| James M. Evangelista<br>jim@hpllegal.com | Jeffrey Emery Tompkins<br>j.tompkins@tkstlaw.com |
| Jeffrey R. Harris<br>jeff@hpllegal.com | Thomas G. Sampson<br>t.sampson@tkstlaw.com |

Respectfully submitted this 2nd day of December, 2015.


<u>/s/ Valerie L.  Hletko</u>
Valerie L.  Hletko

<u>**APPENDIX:**</u>
<u>**DEFENDANTS' PROPOSED DISCOVERY SCHEDULE**</u>

<u>**PHASE ONE**</u>

<u>**Purpose:**</u>

To identify any illegal, discriminatory loan origination or loan servicing practices occurring within the statute of limitations period (on or after October 18, 2010); to identify specific properties where discriminatory practices occurred and caused Plaintiffs injury; and to determine whether Plaintiffs diligently pursued their claim.

<u>**Discovery to be exchanged:**</u>

<u>Defendants to provide:</u>

- HMDA LAR data (with property addresses) for all loans originated in the three Counties by any Defendant entity from 10/18/2010 through 12/31/2014.

- Mortgage origination policies and procedures from 10/18/2010 through 12/31/2014.

- Mortgage servicing policies and procedures from 10/18/2010 through 12/31/2014.

<u>Plaintiffs to provide:</u>

- With respect to any property securing a loan originated by Defendants (the "Phase One Loans" or "Phase One Properties"), and any property within a one-block radius of each Phase One Property (the "Surrounding Properties"), Plaintiffs will provide information evidencing any alleged injury at those properties, and information probative of the cause of Plaintiffs' alleged injuries at those properties, including information relating to:

  - Property vacancy

  - Property condition

  - Housing code violations

  - Municipal services rendered (*e.g.*, fire, police, and property maintenance)

  - Tax liens and other municipal liens

  - Downpayment and/or mortgage assistance programs

  - Social services rendered to owners or occupants

  - Foreclosures

  - Public records relating to owners or occupants

- Documents and information relating to whether Plaintiffs were aware or should have been aware of a potential FHA claim against Defendants in particular prior to October 18, 2010.

At the conclusion of Phase One, Plaintiffs will identify the alleged discriminatory practice(s) that occurred during the limitations period, and will identify by address the Phase One Properties securing loans they contend are discriminatory (as a result of those practices) and caused Plaintiffs injury.

Defendants' anticipated summary judgment motion will demonstrate that Plaintiffs failed to identify any FHA violation that occurred in the limitations period. If Plaintiffs cannot show any occurrence of discriminatory conduct within the limitations period, which caused them injury, the claim will be barred by the statute of limitations. *See City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1285 (11th Cir. 2015); (Omnibus Order 6-10.) Further, Defendants will demonstrate that Plaintiffs' claim also is barred because they were aware, or should have been aware, before the limitations period that HSBC in particular potentially caused Plaintiffs' alleged damages.

26

## PHASE TWO

### Purpose:

If the Court denies Defendants' Phase One motion for summary judgment, Phase Two discovery may include an exchange of similar discovery from Phase One, as applicable to any properties securing loans originated by Defendants and made prior to the limitations period (*e.g.*, applicable loan data and policies from Defendants, and property-specific information from Plaintiffs sufficient for Defendants to test Plaintiffs' theory of causation of damages at any potentially relevant properties).  The precise scope of Phase Two discovery will be determined in part by the Court's order on Defendants' anticipated Phase One summary judgment motion, and the parties' discovery requests.

### Discovery to be exchanged:

Defendants to provide:

- Information regarding loans made or other activity occurring prior to October 18, 2010 and relating to the purported discriminatory mortgage loan origination or servicing practice that continued into the limitations period ("Phase Two Loans").

- Any other discovery as appropriate in light of the Court's Phase One summary judgment order.

<u>Plaintiffs to provide:</u>

- With respect to any Phase Two Loan, and any property within a one-block radius of each property securing a Phase Two Loan (the "Surrounding Properties"), Plaintiffs will provide the same categories of information as enumerated in Phase One.

- Any other discovery as appropriate in light of the Court's Phase One summary judgment order.

At the end of Phase Two, insofar as they have a sufficient factual basis for doing so, Plaintiffs will amend their complaint to identify all properties (from Phase One and Phase Two) securing an HSBC loan (1) that was discriminatory pursuant to a practice that continued into the limitations period; and (2) where Plaintiffs suffered an injury fairly traceable to a discriminatory practice.

**PHASE THREE**

**Purpose:**

To examine the nature and extent of Plaintiffs' alleged damages at the Subject Properties identified in Plaintiffs' Amended Complaint and, if necessary, to determine the extent of any involvement by HSBC holding companies in loan marketing, funding, securitization, or other aspects of Plaintiffs' alleged "scheme" that may be relevant to Plaintiffs' claim and/or damages.

**Discovery to be exchanged:**

Defendants to provide:

- Information relating to any HSBC Defendant entity's involvement in loan marketing, funding, securitization, or other aspects of Plaintiffs' alleged "scheme" and relevant to Plaintiffs' claim and injury.

Plaintiffs to provide:

- For each Subject Property listed in the Amended Complaint, all information regarding the nature and extent of Plaintiffs' alleged damages.

* * * * *