# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| DEKALB COUNTY, FULTON COUNTY, and COBB COUNTY, GEORGIA, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | CIVIL ACTION NO.: |
| HSBC NORTH AMERICA HOLDINGS INC., ET AL., ) ) ) ) | 1:12-CV-03640-ELR |
| Defendants. ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' SUBMISSION AND IN SUPPORT OF PLAINTIFFS' [PROPOSED] SCHEDULING ORDER**

Notwithstanding the procedurally improper nature of the HSBC Defendants'

Memorandum In Support of Proposed Scheduling Order [ECF No. 112],[1] Plaintiffs

---

[1] On November 16, 2015 the Court ordered the parties to file a jointly proposed scheduling order, or separate orders if the parties "absolutely cannot agree upon a schedule, after working diligently to do so." November 16, 2015 Order [ECF No. 110] at 23. The Court did not authorize Defendants to submit a memorandum of law to argue about their position in a procedurally improper manner. The Counties strongly object. Defendants have used their memorandum to argue discovery matters in an end-run around this Court's explicit directive regarding the scope of the December 9 teleconference hearing. This is yet another blatant example of Defendants' continued disrespect for this Court and this Court's orders. As a result, the Counties must now file this Response in support of their own position and respectfully request that the Court consider the matters discussed herein.

1

DeKalb County, Fulton County, and Cobb County, Georgia, (the "Counties") respectfully file this Response in opposition to Defendants' phased discovery proposal and in support of their own proposed Discovery Schedule. [ECF No. 111]

## Background

It has been three years since the Complaint was filed in this case and over two years since Defendants' motion to dismiss was denied. To this day **Defendants still have not produced a single document or any of the critical mortgage lending and servicing information, despite this Court's repeated orders to do so**.[2] *See* May 20, 2014 Order [ECF No. 55]; June 10, 2014 Order [ECF No. 61] and March 3, 2015 Order [ECF No. 75]. To this point Defendants have abused the discovery process and avoided producing the critical information that would entirely eliminate their statute of limitations defense. Having benefited from their willfully bad faith discovery practices, Defendants now rely on the

---

[2] The Court denied the Counties' request for sanctions in the November 16 Order, indicating that given the period since the motion was filed in July 2015, it was "unclear whether, in light of the Court's rulings in this Order, Plaintiffs are still seeking discovery." November 16 Order at 22, note 10. In accordance with the Court's directive in its November 16 Order at 22, and the procedures for discovery disputes in the Court's Standing Order, the Counties advised the Court on December 8, 2015 that they still require the discovery they have demanded.

Court's reconsideration of its March 3 Order on the statute of limitations issue[3] to propose **another** phased discovery schedule that only will further delay this case.

Defendants' continued effort to avoid producing full loan data, loan servicing and foreclosure data, and all other policy and practice merits-related discovery is outrageous and highly prejudicial. The Counties plainly demonstrated in their August 11, 2014 Opposition to Defendants' initial summary judgment motion on statute of limitations issues that:

---

[3] The Counties intend to file a Motion for Reconsideration or, in the alternative, 1292(b) interlocutory review, of the Court's November 16, 2015 Order. The Court's March 3 decision got the issues correct, particularly with respect to the statute of limitations. But the Court has since read the Eleventh Circuit's dicta in *Miami v. Bank of America,* 800 F.3d 1262 (11th Cir. 2015), to mean that the constricts of the common law "continuing violations doctrine" displaces the plain language of the FHA's limitations provision even in cases, like the Counties' case here, where the limitations period has not begun to run on the face of the allegations of the Complaint. The Eleventh Circuit explicitly pointed out in its discussion of the "continuing violations doctrine" that the City of Miami conceded that its complaint -- alleging only discriminatory loan making activity – was untimely as it did not allege that any loans were made within two years prior to filing that complaint. *Miami*, 800 F.3d at 1284. That is plainly not the situation before this Court. The Counties alleged that Defendants' discriminatory housing practice of equity stripping was continuing at the time the Complaint was filed as a result of Defendants' continued loan servicing practices, foreclosure activity, and additional lending activity. Complaint, ¶272. Thus, the Court's conclusion that the Counties must rely on the common law "continuing violations doctrine," and are therefore subject to a discovery rule, directly conflicts with the plain language of the FHA, the *Miami* decision itself (*see* 800 F.3d at 1284-86), and clear Supreme Court precedent directing courts not to apply the FHA's limitations provision in a "wooden" manner, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982).

- Defendants **admitted to post-October 2010 servicing** of mortgage loans at issue in the Complaint that were made to minority borrowers before October 2010; and

- Defendants' post-October 2010 **foreclosure activity in of itself was discriminatory on its face**, as reflected in the disparate and disproportional numbers of Defendants' foreclosures in the Counties' minority neighborhoods.

[*See* ECF Nos. 66-2, ¶¶ 5-16, 22-29; 66-3, ¶¶ 7-15 & Exs. 4-11].

The Court subsequently has **twice** denied summary judgment to Defendants on the statute of limitations issue. March 3, 2015 Order [ECF No. 75] at 10; November 16, 2015 Order [ECF No. 110] at 17. Thus, there is absolutely no legitimate basis for phased discovery limited to statute of limitations issues. Defendants must not be permitted to further delay this case and abuse the discovery process.

As directed by the Court in the November 16 Order, the Counties submitted their own proposed Scheduling Order [ECF No. 111] because Defendants refused to discuss anything other than the inappropriate and prejudicial phased approach they are now advocating.

### The Counties' Proposed Scheduling Order Is Appropriate

The Counties' proposed Scheduling Order sets a reasonable time frame for completion of fact and expert discovery, particularly in light of the protracted

procedural history of this case. It requires Defendants to produce all of the information the Counties have demanded to date, particularly Defendants' mortgage loan, loan servicing and foreclosure data for the entire period from 2003 to the current date, as well as Defendants' policy, practice and compliance related documentation and email covering the same time period.

The Counties' proposed Scheduling Order also establishes an orderly discovery process relating to the Counties' production of documents responsive to Defendants' requests. Those documents primarily relate to the Counties' damages, which must be tied to the addresses of homes where Defendants made the mortgage loans at issue. The Counties' production of this information depends upon prior receipt of Defendants' complete mortgage loan LAR data, servicing data, and foreclosure data that identify the addresses of the affected properties. The Court itself recognized this in its initial September 25, 2013 Order [ECF No. 23] at 21, referencing the Counties' explanation of the difficulty in identifying damaged properties due in part to Defendants' use of Mortgage Electronic Registration Systems (MERS) for recording and foreclosing mortgages and that this concealed Defendants' lending and foreclosure activity.

In short, the Counties' Scheduling Order moves this case forward on the merits in a logical and reasonably expeditious manner. Had the Court done this

nearly two years ago in the first scheduling order, as the Counties pleaded the Court do at the initial scheduling conference on January 8, 2014, this case might have been resolved by now. Indeed, the Counties suggested at the January 8, 2014, scheduling conference that Defendants were going to engage in exactly the type of obstreperous discovery behavior that has persisted, unabated, for nearly two years.

The resulting delay caused by Defendants' discovery gamesmanship has prejudiced the Counties and is contrary to the purpose of the Federal Rules to ensure a speedy, fair and efficient resolution of civil matters.

### The Counties' Proposed Scheduling Order Provides Critical Discovery

In the context of evaluating Defendants' statute of limitations defense, this Court has recognized that the nature and character of Defendants' activities involved in the discriminatory housing practice alleged by the Counties -- i.e., "equity stripping" – are to be "examined again at summary judgment – or at trial." *See* September 25, 2013 Order at 30-32 [ECF No. 23]. It therefore is critical for the Court to understand that equity stripping is not about two distinct, and unrelated, activities -- loan making and loan servicing -- or that the continuing nature of the alleged scheme can be limited by separately applying purported limitations periods to different alleged activities in isolation from one another. This is because Defendants' alleged nationwide discriminatory housing practice of

equity stripping is inherently a multi-year scheme with many inter-related and interdependent components, involving large numbers of mortgage loans being serviced and foreclosed over an extended time period. Its continuing nature is due to the realities of the entire mortgage lending and servicing process itself.

As noted in *Hargraves v. Capital City Mortgage Corp.*, "equity stripping" includes making loans with "exorbitant interest rates [and] lending based on the value of the asset securing the loan rather than a borrower's ability to repay"; "issuing a loan 'designed to fail' and profiting by acquiring the property through default"; "loan servicing procedures in which excessive fees are charged"; and "repeated foreclosures." 140 F. Supp. 2d 7, 20-21 (D.D.C. 2000), *on reconsideration in part*, 147 F. Supp. 2d 1 (D.D.C. 2001) (denying summary judgment for defendant on FHA equity stripping claim).

Defendants' alleged equity stripping scheme does not end until the last loan made pursuant to the scheme is repaid by the borrower, the borrower defaults and returns the home to Defendants, or Defendants (or their agents) foreclose and repossess the home. Thus, the following activities by Defendants – regardless of whether the loan was made within the Counties - affirmatively demonstrate the existence and continuation of Defendants' nationwide equity stripping scheme that the Counties have alleged here:

1. Any servicing activity by any Defendant (or third party) on any discriminatory loan for which Defendants are responsible[4] (*see* Complaint, ¶¶ 272-288); **or**

2. Any foreclosures by any Defendant (or third party) on any discriminatory loan for which Defendants are responsible (*see id.*, ¶¶ 256-271; 272-288); **or**

3. Any foreclosure or other servicing practices by any Defendant (or third party) on any discriminatory loan for which Defendants are responsible, which practices are **discriminatory in of themselves**, including those demonstrated by disparate impact (*see id.*); **or**

4. The creation by any Defendant entity of any new discriminatory loan[5] (*see id.*, ¶¶ 62-135; 149-186).

Thus, to demonstrate the **nature and continuation** of Defendants' equity stripping scheme, the Counties necessarily require: (1) the underlying loan data for all loans Defendants are responsible for in the Counties (regardless of when the loan was made); (2) the full servicing and foreclosure data for all such loans; and

---

[4] This activity includes, for example, the receipt and processing of borrower loan payments, failing to timely process borrower payments resulting in surcharges or borrower loan defaults, charging borrowers improper fees – whether or not stated in the terms of the loan, refusing to timely respond to borrower requests for loan information or loan modification on a previously made discriminatory loan, improperly refusing to modify a previously made discriminatory loan, initiating and processing foreclosure proceedings on discriminatory loans, and creating and filing false documents relating to such foreclosure proceedings.

[5] This includes improper loan origination or steering practices, or funding others to do so, all as demonstrated through, *inter alia*, Defendants' loan marketing practices, loan application and origination practices, loan pricing and compensation practices, and loan underwriting practices.

(3) the policies and practices Defendants actually engaged in regarding those loans. All of this information is absolutely necessary to link Defendants' interrelated activities with respect to any specific mortgage loan to show that Defendants engaged in the alleged discriminatory housing practice of equity stripping.

Since the outset of discovery in this case, the Counties have strenuously demanded the production of Defendants' loan (LAR) data, servicing and foreclosure data, policy and practice information and other documents to prove that Defendants continue to engage in any or all of the activities above.  The Counties' proposed Scheduling Order specifically requires Defendants to produce all such discovery, without further delay – discovery that the Court has already ordered to be produced on multiple occasions.

## **Defendants' Proposed Scheduling Order Is Highly Prejudicial**

Defendants' proposed Scheduling Order is plainly prejudicial on its face to the Counties and ignores the fact that the Court's November 16 Order denied summary judgment to Defendants on this issue.  It would enable Defendants to avoid production of the critical discovery the Counties need relating to Defendants' limitations argument – discovery that this Court repeatedly has ordered must be produced - while giving Defendants an opportunity for **yet another intervening summary judgment motion** on statute of limitations before the Counties had the

critical information needed to oppose Defendants' argument. This is the pinnacle of abusive discovery behavior and it will not stop unless this Court makes it stop.

The Scheduling Order proposed by Defendants isolates and separates discovery on each of the interrelated and continuing elements of the alleged equity stripping scheme, set forth in items 1-4 above, through piecemeal, out of order, productions of critical information including loan (LAR) data, lending and servicing policy and practice information, and loan servicing data over different time periods. Phase One explicitly limits Defendants' production to **only** Defendants' post-October 2010 loan origination data and related loan making policies. This enables Defendants to improperly focus their rote limitations argument to just one of the multiple, interrelated, continuing components of the alleged equity stripping scheme -- Defendants' post-October 2010 loan origination practices that likely involves a relative small number of mortgage loans in the Counties. This activity is **the least significant aspect** of the scheme's continuing nature since the vast majority of subject loans (approximately 22,500) were made prior to October 2010 and continued to be serviced by Defendants or a third party.

Indeed, Defendants' proposed Phase One intentionally excludes **all servicing data and foreclosure data** on the approximate 22,500 loans Defendants made in the Counties prior to October 2010, including the servicing on those loans

that occurred after October 2010, as well as the servicing data on even the loans made after October 2010.  Defendants' stonewalling is blatant here, particularly considering that: (1) Defendants admitted they (and not including any third party) continued to service approximately 371 subprime loans as of October 2012 that were made to minority borrowers within the Counties; and (2) the Counties demonstrated Defendants' continuing and facially discriminatory foreclosure activity.  [*See* ECF Nos. 66-2, ¶¶ 5-16, 22-29; 66-3, ¶¶ 7-15 & Exs. 4-11].

Finally, the Counties reject Defendants' offer to just "assum[e], for now, that the Holding Company Defendants exercised 'control and direction' over their subsidiaries." Defendants' Memo at 20 [ECF No. 112]. This is a plainly veiled attempt to avoid production of the discriminatory housing policies and practices at issue in this litigation, which Defendants suggest were controlled and directed by the Holding Company Defendants. Defendants must be required to produce this substantive, merits discovery.

## Conclusion

This matter should now immediately proceed to full merits discovery.  As such, the Counties respectfully request that the Court enter the Counties' proposed Scheduling Order.  In this way the Court can mitigate some of the prejudicial delay already caused by the two-years of wasted time in this case as a result of

Defendants' continued refusal to comply with this Court's discovery orders. Anything less would work further injustice on the Counties and violate the purpose of the Federal Rules.

Dated:   December 8, 2015            Respectfully submitted,

By: /s/ James M. Evangelista
Jeffrey R. Harris (GA Bar 330315)
Darren W. Penn (GA Bar 571322)
James M. Evangelista (GA Bar 707807)
David J. Worley (GA Bar 776665)
HARRIS PENN LOWRY, LLP
400 Colony Square, Suite 900
1201 Peachtree Street, NE
Atlanta, GA  30361
Phone: (404)961-7650
Fax: (404)961-7651

Hezekiah Sistrunk, Jr. (GA Bar 649413)
Jane Lamberti Sams (GA Bar 432025)
Shean D. Williams (GA Bar 764139)
COCHRAN, CHERRY, GIVENS, SMITH, SISTRUNK and SAMS P.C.
127 Peachtree Street
Atlanta, GA 30303
(404) 222-9922
(404) 222-0170

*Co-Counsel for Plaintiffs DeKalb County, Fulton County & Cobb County, Georgia*

Thomas G. Sampson, Sr. (GA Bar 623600)
Jeffrey E. Tompkins (GA Bar 714608)
THOMAS KENNEDY SAMPSON &
TOMPKINS LLP
3355 Main Street
Atlanta, Georgia 30337
(404) 688-4503 (phone)
(404) 761-3224 (fax)

*Additional Co-Counsel for Plaintiff
Fulton County, Georgia*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I served the above and foregoing PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' SUBMISSION AND IN SUPPORT OF PLAINTIFFS' [PROPOSED] SCHEDULING ORDER on all parties by causing a true and correct copy to be filed with the court's electronic filing system, which should automatically send a copy to all counsel of record.

Dated:  December 8, 2015          /s/ James M. Evangelista
                                  James M. Evangelista